618 P.2d 359

**STATE of New Mexico ex rel. S. E. REYNOLDS, State Engineer, Plaintiff–Appellant,**

v.

**David HOLGUIN, Defendant–Appellee.**

**No. 12750.**

Supreme Court of New Mexico.

Oct. 22, 1980.

Jeff Bingaman, Atty. Gen., V. Henry Rothschild, Sp. Asst. Atty. Gen., Santa Fe, for plaintiff–appellant.

Martin, Martin & Lutz, William L. Lutz, Las Cruces, for defendant–appellee.

## OPINION

FEDERICI, Justice.

Appellant State of New Mexico, on the relation of the State Engineer (Reynolds) filed this action against appellee (Holguin) for injunctive and declaratory relief in the District Court of Sierra County, seeking to terminate the unlawful diversion of public waters. The court entered judgment on a jury verdict against the State. Upon denial of its motion for a new trial and entry of judgment for Holguin, Reynolds appealed. We affirm in part and reverse in part.

Reynolds determined that Holguin was illegally diverting waters from the Rio Grande. He filed suit to enjoin the alleged unpermitted and illegal diversion pursuant to the authority vested in him by Section 72–5–39, N.M.S.A.1978. Holguin contended that his water rights became vested prior to enactment of the Water Code in 1907 and that he was legally diverting waters to which he had a vested right, and no permit was required for a pre–code water right.

The jury returned a verdict for Holguin, finding in effect that Holguin obtained a vested water right prior to 1907, which water right had never been terminated by non–use.

The claimed errors and the issues in this appeal are: (1) did the trial court err in refusing to admit any of the State's aerial photographs into evidence, and (2) did the trial court err in refusing to conduct supplemental proceedings after the jury returned its verdict in order to determine to which 90 acres the water rights are appurtenant.

### I.

Reynolds attempted to place in evidence certain aerial photographs purporting to show that Holguin's property was wholly unirrigated in 1935, and that irrigation increased on certain portions of the property from 1940 to 1955.

New Mexico statute and case law recognize that a water right initiated prior to March 19, 1907, the effective date of the State Water Code, relates back to the date of its initiation, whereas a water right initiated after that date relates back only to the time the application is received by the State Engineer. Section 72–1–2, N.M.S.A. 1978. Because Holguin admitted that no application had ever been filed with Reynolds, it was incumbent upon him to prove that his water right had been initiated prior to 1907 in order for him to prevail in this lawsuit.

To prove his claim to a pre–1907 water right, Holguin presented the testimony of four witnesses, one of whom testified from personal knowledge that the property had been irrigated for farming since 1900, but failed to testify as to the extent or exact location of the farming operation. The other three witnesses admitted they had no personal knowledge of the property prior to 1907.

The State intended to put on its expert hydrologist, Fred Allen, to interpret six aerial photographs (Exhibits 6 through 11, inclusive), dating from 1935 to 1955, to establish that the land had not been farmed until after the year 1935. Exhibit 6 was admitted for certain purposes, but excluded as to the flight date on which the exhibit was purportedly taken. Exhibits 7 through 11 were offered in evidence, but the trial court refused to admit them for any purpose.

Plaintiff's Exhibit 6 is a large aerial photograph of the Rio Grande River and environs from Caballo Lake to Derry, including Holguin's property. Based on the Reynolds' certification, and the lengthy foundation testimony of Fred Allen, Chief of the State Engineer's Technical Bureau, the court admitted the document under the public records exception to the hearsay rule, N.M.R. Evid. 803(8), N.M.S.A.1978. There was no statement on the exhibit's face that it was a photograph taken in 1935. When Mr. Allen attempted to testify as to the flight date it was excluded on the basis of hearsay. The original film of a 1935 aerial survey prepared under authority of the Soil Conservation Service is on file in the National Archives in Washington, D.C. Mr. Allen, having received only an oral and written confirmation that Exhibit 6 was an aerial photograph taken from the 1935 flight date, had no personal knowledge as to the date that the photograph was taken. When it became apparent that the State was relying on the exhibit to establish the state of plaintiff's land in 1935, the court ruled that the exhibit could not be so used. It is unclear whether the court actually excluded the exhibit for all purposes.

■ The first ground on which Reynolds relies for reversal of the trial court is that

Section 72–4–16, N.M.S.A.1978, permits the admission in evidence of the original or certified copy of Exhibit 6. That statute reads:

All reports of hydrographic surveys of the waters of any stream system, or parts thereof, and other surveys heretofore or hereafter made by the state engineer, or under his authority, or by any engineer of the United States, or any other engineer, in the opinion of the state engineer qualified to make the same, may, when made in writing and signed by the party making the same, be filed in the office of such state engineer, and the originals or certified copies thereof, made by such state engineer, shall be received and considered in evidence in the trial of all causes involving the data shown in such survey, the same as though testified to by the person making the same, subject to rebuttal, the same as in ordinary cases.

Section 72–4–16 requires any such writing to be "signed by the party making the same." This does not appear on the exhibit. Since the exhibit did not comply with the statute, Reynolds cannot rely upon it for admission of Exhibit 6.

■ Even if Reynolds did comply with the statute, it is limited by our rules of evidence, and the statute cannot expand them. Admissibility of evidence is procedural to be governed by rules adopted by the Supreme Court. If there is a variance between a statute and the rules of evidence adopted by this Court, the rules prevail. *Ammerman v. Hubbard Broadcasting, Inc.,* 89 N.M. 307, 551 P.2d 1354 (1976). We must look to our rules and determine whether Exhibit 6 was admissible under them.

■ N.M.R.Evid. 802, N.M.S.A.1978 states: "Hearsay is not admissible except as provided by these rules or by other rules adopted by the supreme court or by statute." Therefore, Reynolds was required to meet one of the exceptions to the hearsay rule for his evidence to be admissible. The permissible exceptions are set forth in N.M. R.Evid. 803 and 804, N.M.S.A.1978. Reynolds relies upon Rule 803(8)(C), as the basis upon which Exhibit 6 should have been admitted. That rule states:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . . .

(8) *Public records and reports.* Records, reports, statements or data compilations, in any form, of public offices or agencies, setting forth . . . (C) in civil actions and preceedings [sic] . . ., factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Here, we have a document in the State Engineer's files, apparently representing an aerial survey made in 1935 and 1936. The only evidence showing that it is what it purports to be is the testimony of Mr. Allen. He admits that his only bases for knowing the date of the document are oral and written statements from the National Archives in Washington, D.C. The only oral or written statement produced was a report of the Rio Grande Joint Investigation in the Upper Rio Grande Basin in Colorado, New Mexico and Texas 1936–37, admitted as Exhibit 4. The report contains the following statement:

Throughout this region [Middle Rio Grande Valley] the field mapping was done on prints resulting from an aerial photographic survey of the Rio Grande Basin in New Mexico, north of the Thirty–third parallel, for the Soil Conservation Service. The flying for this survey was done by a western corporation [Fairchild] during the 1935 season.

While this evidence indicates that such a survey took place in 1935, it does not show that Exhibit 6 is a document from the survey.

Allen further testified that a number "418" which appears in bold print on the exhibit, identifies it as a photograph of a specific quadrangle from that survey, because that is what his office filing system indicates. He further testified that the State Engineer's office was told by someone in Washington, D.C. that Exhibit 6 was a document from the 1935 survey. The State

had a written certification at some time, but apparently lost it. Thus, no oral or written statement by any officer of the United States was produced. We now consider whether the testimony of Mr. Allen is sufficient.

Reynolds argues that there should be no requirement of personal knowledge of the witness in this situation. 4 Weinstein and Burger, *Evidence* § 803(8)[02] (1979 ed.) states:

Rule 803(8) is silent about a requirement of personal knowledge, although the introductory notes to Rule 803 state that "neither this rule nor Rule 804 dispense with the requirement of first–hand knowledge." In the case of Rule 803(8) this requirement must be interpreted flexibly, bearing in mind that the primary object of the hearsay rule is to bar untrustworthy evidence.

Neither the trial court nor this Court quarrels with the admissibility of the document as it was presented. However, it is quite another matter to rely upon the survey to establish the date of the survey where the map itself is silent on the issue.

Here, we have a report furnished by a federal agency to a state agency. The authenticating official worked for the state agency. He testified, upon inquiry, that he had been told the date of the survey by some federal official, and that he had received verification in writing. Nothing more was produced through witnesses or under our rules of evidence to authenticate it. The number "418" on the map does not help. The official testified that according to *state* records, this number showed the map to be a part of a 1935–36 survey. This is not sufficient to establish trustworthiness, or in the alternative, to overcome lack of trustworthiness under Rule 803(8)(C). Evidence of the date was available through witnesses with personal knowledge, such as a federal custodian of the records, who could have testified that the survey map was dated to a certain time period through the record keeping process, or through some method of self–authentication of the date of the survey map.

Judge Weinstein states:

Of course, there may be instances when questions will be raised about the manner in which the record was made or kept . . . which must be satisfactorily explained by a custodian or other qualified witness, if the judge is not to exclude [it] for lack of trustworthiness.

4 Weinstein, *supra*, § 803 at (8)[0].

"[T]he determination of trustworthiness is within the discretion which is traditionally allowed the trial court in the admission of evidence if surrounding factors indicate sufficient reliability." *State v. Ramirez*, 89 N.M. 635, 645, 556 P.2d 43, 53 (Ct.App.1976).

The decision of the trial court to bar admission of Exhibit 6 insofar as Reynolds attempted to use it to establish a date is affirmed. However, Reynolds is not barred from presenting Exhibit 6 for other purposes as reflected by the trial court's findings and conclusions.

■ Exhibits 7 through 11 purported to be photographic reproductions of aerial photographs taken by the International Boundary Commission of appellee's land in 1935, 1940, 1947, 1950 and 1955. They were obtained from the general manager of the Elephant Butte Irrigation District. The photographic reproductions were not records of the State Engineer's office. As such, Mr. Allen, an official of the State Engineer's office, could not testify to their authenticity as public records. The only other methods by which the photographs could have been authenticated were through N.M.R.Evid. 901 and 902, N.M.S.A. 1978. Rule 901(7) allows public records to be authenticated if they are recorded or filed in a public office. There was no evidence offered to show this. Likewise, Reynolds did not meet any of the other requirements imposed by Rule 901.

If the documents were not self–authenticated under Rule 902, they were not admissible. Each exhibit contained the following statement:

I certify that this is a photographic reproduction of a May, 1935 aerial photograph of [description of area] and which aerial photograph is on file in the International Boundary and Water Commis-

sion office at the American Dam, El Paso, Texas.

Signed __[signature of George A. May]__
Title __Project Superintendent__
Date __11–24–75__

The documents were not acknowledged or under seal. The only methods of self–authentication available to appellant under Rule 902 were: (1) for domestic public documents not under seal (Rule 902(2), or (2) for certified copies of public records (Rule 902(4)).

Rule 902(2), insofar as applicable here, provides that domestic public documents not under seal must: (1) purport to bear the signature of an officer or employee of the United States (in this case) in his official capacity; (2) show that the officer or employee has no seal; and (3) the official's signature must be certified by a proper public officer under seal that the signer has the official capacity and that the signature is genuine. Exhibits 7 through 11 do not meet any of these requirements.

Rule 902(4) sets out the requirements applicable to certified copies of public records and provides that they are admissible if certified as correct by the custodian or other person authorized to make the certification in compliance with Rule 902(1)(2) or (3).

There is no evidence on the documents indicating who George A. May is or what his official capacity is. The title "Project Superintendent" does not identify him as an official of the United States. The certification does not indicate whether he had a seal, nor was his signature certified by a proper public officer under seal that the signer has the official capacity and that the signature is genuine. The certification on Exhibits 7 through 11 is insufficient to meet the requirements imposed by Rule 902. The exhibits were not admissible in evidence and the trial court properly excluded them.

## II.

■ Did the trial court err in refusing to conduct supplemental proceedings to determine the 90 acres to which Holguin's water rights appertained?

Appellee owns 224 acres of land. One hundred twenty of the acres are being currently irrigated but at the trial he claimed rights for irrigation of only 90 acres of the total acreage owned by him. No evidence was introduced to show which 90 acres had the appurtenant water right. This was called to the trial court's attention but no findings or conclusions were made by the trial court.

Under the New Mexico Water Code, water rights are appurtenant to specific acreage. Sections 72–1–2 and 72–5–23, N.M.S.A.1978. This applies to *all* water rights. *Snow v. Abalos*, 18 N.M. 681, 140 P. 1044 (1914). There cannot exist an administerable water right for 90 acres unless the trial court first determines the acreage to which the right is appurtenant.

The cause is remanded to the trial court for a hearing to determine to which 90 acres appellee's water rights appertain. We have considered the other arguments made by Reynolds on the issues and find them without merit. The trial court is affirmed on all other issues.

IT IS SO ORDERED.

SOSA, C. J., and PAYNE, J., concur.