2007-NMCA-077

162 P.3d 187

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Roger SOTO, Defendant–Appellant.**

**No. 25,473.**

Court of Appeals of New Mexico.

April 27, 2007.

Certiorari Denied, No. 30,407, June 12, 2007.

Gary K. King, Attorney General, Santa Fe, NM, Jacqueline R. Medina, Assistant Attorney General, Albuquerque, NM, for Appellee.

John Bigelow, Chief Public Defender, Laurel A. Knowles, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

CASTILLO, Judge.

{1} Defendant's motion for rehearing is denied. The opinion filed in this case on April 3, 2007, is withdrawn, and this opinion is substituted. Defendant appeals his convictions for driving while intoxicated (DWI) and driving with a suspended or revoked license. Defendant raises three issues. He contends (1) that the trial court committed reversible error in permitting the State to question Defendant about the truth of Officer Albert Longobardi's testimony, (2) that the trial court abused its discretion when it admitted the computer printout of Defendant's driving record into evidence, and (3) that the evidence was insufficient to convict Defendant of aggravated DWI. We conclude that the improper questioning resulted in reversible error, that the trial court did not abuse its discretion in admitting Defendant's driving record for a limited purpose, and that the evidence was sufficient to convict Defendant of DWI. Accordingly, we reverse in part and

affirm in part. We remand for further proceedings on the charge of DWI.

## I. BACKGROUND

{2} Upon motion by defense counsel, the DWI charge and the license charge were severed for trial. Thereafter, Defendant was convicted of aggravated DWI in a jury trial and convicted of driving with a revoked or suspended license in a bench trial. We recount the facts pertinent to each charge.

### A. DWI

{3} The following facts derive from Officer Longobardi's testimony. At about 5 a.m., Officer Longobardi and Officer Donald Piatt were dispatched to a convenience store to investigate a report of domestic violence. Defendant drove by in a pickup truck as the officers were interviewing Defendant's brother, who was the alleged victim of the reported incident, in the parking lot of the store. The officers left in their marked vehicles to pursue Defendant, then initiated a traffic stop to question him about the domestic violence report. Prior to the stop, Officer Longobardi noticed nothing unusual about Defendant's driving or the length of time it took for Defendant to pull over when the officers engaged their flashing lights. Upon contact with Defendant, Officer Longobardi asked Defendant for his driver's license, which he was unable to produce. Officer Longobardi then asked Defendant to step out of the vehicle and placed him under arrest, based on reasonable suspicion of domestic violence. While Officer Longobardi was speaking with Defendant, the officer detected "a very strong odor of an alcoholic beverage on his breath." The officer also noticed that Defendant had slurred speech and red, bloodshot, watery eyes.

{4} Officer Longobardi further testified to the following. Based on his observations and the information he received regarding the incident of domestic violence, Officer Longobardi was of the opinion that Defendant was under the influence of alcohol. Officer Longobardi did not ask Defendant if he had been drinking, but Defendant voluntarily admitted he had been drinking at his mother's apartment. Officer Longobardi therefore saw the potential for a DWI charge, in addition to the domestic violence charge. He did not conduct any field sobriety tests, however, because Defendant was already handcuffed and because Officer Longobardi was concerned that Defendant would run or become violent if he were uncuffed. Department policy directs officers to refrain from uncuffing an individual who has already been placed into custody. Officer Longobardi then transported Defendant to the detention center and, while doing so, advised him that he would be charged with domestic violence and DWI. Officer Longobardi also advised Defendant of the New Mexico Implied Consent Act, NMSA 1978, §§ 66–8–105 to –112 (1978, as amended through 2005), and asked Defendant to take a breath test. Defendant refused. As a result of the investigation regarding the domestic violence incident and of Defendant's refusal to submit to the breath test, Officer Longobardi concluded that Defendant was "definitely" impaired by alcohol. Officer Longobardi also stated that Defendant was cooperative throughout the officer's encounter with Defendant.

{5} Officer Piatt also testified briefly. When asked by the State if based on his observations of Defendant, Officer Piatt had come to any conclusion as to whether or not Defendant was intoxicated, Officer Piatt replied that he could conclude Defendant had been drinking. Officer Piatt also testified that he had been to the apartment where the alleged domestic violence incident had occurred and that he had seen "a lot of empty beer cans" there. Further, he stated that Defendant's brother had been drinking.

{6} In addition, Defendant testified to the following. Defendant refused to take the breath test after he was arrested because he was upset and believed that he shouldn't have been arrested for either charge. He further stated that he should have taken the test and that he did not think he would have tested over the legal limit. Defendant thought at the time of arrest, however, that taking the breath test was pointless because he had already been arrested and was going to jail. Defendant also contested Officer Longobardi's statement that Defendant admitted he had been drinking. Defendant

denied any admission of drinking. Rather, he specifically recalled that he told the officers his brother had been drinking. At this point, the State began its allegedly improper questioning of Defendant. We reproduce the transcript of this questioning later in the opinion.

### B. Driving With a Revoked or Suspended License

{7} At trial, Officer Longobardi testified that when he asked Defendant for his driver's license, Defendant told him that the license was revoked. Officer Longobardi also testified that he ran a computer check on Defendant's license at the time of arrest and that this check indicated Defendant's license was revoked. In addition, the State moved for admission into evidence a Motor Vehicle Division (MVD) packet, which included a two-page computer printout identified as the Motor Vehicle Driver Record of Defendant. The State used the printout, dated March 25, 1997, to show that Defendant's license was indeed suspended at the time of his arrest. Prior to trial, defense counsel had objected to admission of the MVD packet on discovery and hearsay grounds. At trial, defense counsel renewed her hearsay objection and also objected on foundational grounds. She argued that the meaning of the codes on the computer printout was not clear and that foundational testimony was therefore required to show that Defendant's license was revoked or suspended at the time of his arrest.

{8} At the request of the court, the prosecutor highlighted in yellow the relevant portion of the printout. The State argued that the printout clearly shows a ten-year suspension was imposed on September 3, 1996. Defense counsel pointed out that the printout does not clearly state that a ten-year suspension was imposed because the printout indicates that a hundred-year suspension had been imposed, since the end date was identified as September 3, 2096. She argued that the printout was therefore not self-explanatory and that she was unable to cross-examine anyone regarding the inconsistencies within the printout and the meaning of the codes. The court admitted the printout solely for

the purpose of showing that the revocation or suspension began on September 3, 1996.

{9} On cross-examination, Officer Longobardi testified that he was familiar with the codes on the printout, and he explained that the code "X3C" indicated a suspension based on a traffic citation, rather than a DWI. Officer Longobardi agreed that once an individual had resolved any tickets and fines, he was eligible to have his license reinstated. On redirect, Officer Longobardi further testified that based on the computer printout admitted into evidence, Defendant would not have had a valid driver's license at the time of his arrest. Officer Longobardi also reiterated his earlier assertions that the computer check he ran at the time of the arrest indicated that Defendant did not have a valid license and that Defendant told him that he did not have a valid license.

### II. STANDARD OF REVIEW

{10} A trial court's evidentiary rulings are reviewed for abuse of discretion. *State v. Rojo*, 1999–NMSC–001, ¶ 41, 126 N.M. 438, 971 P.2d 829; *State v. Worley*, 100 N.M. 720, 723, 676 P.2d 247, 250 (1984). A trial court abuses its discretion when a ruling is "clearly against the logic and effect of the facts and circumstances," *State v. Lasner*, 2000–NMSC–038, ¶ 16, 129 N.M. 806, 14 P.3d 1282 (internal quotation marks and citation omitted), or when the ruling is contrary to the reasonable, probable, and actual deductions that may be drawn from the facts and circumstances. *State v. Flanagan*, 111 N.M. 93, 95, 801 P.2d 675, 677 (Ct.App.1990).

{11} When we are determining whether sufficient evidence exists, our review is conducted in two steps. *State v. Apodaca*, 118 N.M. 762, 766, 887 P.2d 756, 760 (1994). We first review the evidence by resolving all conflicts, making all permissible inferences in favor of the verdict, and disregarding all evidence and inferences to the contrary. *State v. Treadway*, 2006–NMSC–008, ¶ 7, 139 N.M. 167, 130 P.3d 746. We then "make a legal determination of whether the evidence viewed in this manner could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt." *Apoda-*

*ca,* 118 N.M. at 766, 887 P.2d at 760 (internal quotation marks and citation omitted). Evidence of a direct or circumstantial nature is sufficient if "a reasonable mind might accept [the evidence] as adequate to support a conclusion." *State v. Caudillo,* 2003–NMCA–042, ¶ 7, 133 N.M. 468, 64 P.3d 495 (internal quotation marks and citations omitted). In conducting our inquiry, we do not reweigh the evidence or substitute our judgment for that of the fact-finder. *State v. Montoya,* 2005–NMCA–078, ¶ 3, 137 N.M. 713, 114 P.3d 393.

## III. DISCUSSION

{12} Defendant makes three arguments: (1) the prosecutor engaged in improper questioning, and the trial court erred when it failed to sustain defense counsel's objection; (2) the trial court erred when it admitted the MVD computer printout of Defendant's driving record; and (3) Defendant's DWI conviction was not supported by sufficient evidence. We address each argument in turn.

### A. Improper Questioning

{13} The State concedes in part that the trial court erred in permitting the prosecutor to question Defendant about the veracity of Officer Longobardi's testimony. We are not bound by the State's concession; to the contrary, we have a duty to consider the issue. *See State v. Muñiz,* 2003–NMSC–021, ¶ 5, 134 N.M. 152, 74 P.3d 86. Defendant points to three questions, which he alleges were improper. The State concedes the issue only as to the first question. The State argues that Defendant failed to preserve the improper questioning issue in regard to the last two questions posed by the prosecutor. We begin our analysis with a discussion of this preliminary issue.

### 1. Preservation

■ {14} The State argues that defense counsel failed to object after the second and third questions at issue and that the issue of improper questioning was thus not preserved in regard to these two questions. We cannot agree. The purposes of the preservation rules were served by defense counsel's objection after the first question. Defense counsel made a specific objection—that the prosecutor was improperly attempting to have Defendant comment on the officer's testimony— and the trial court overruled her objection. *See* Rule 12–216(A) NMRA ("To preserve a question for review[,] it must appear that a ruling or decision by the district court was fairly invoked, but formal exceptions are not required[.]"); *State v. Montoya,* 2005–NMCA–005, ¶ 7, 136 N.M. 674, 104 P.3d 540 ("The primary purposes of the preservation requirement are (1) to alert the trial court to a claim of error so that it has an opportunity to correct any mistake, and (2) to give the opposing party a fair opportunity to respond and show why the court should rule against the objector." (internal quotation marks and citation omitted)), *cert. quashed,* 2005–NMCERT–011, 138 N.M. 587, 124 P.3d 565. Moreover, the objection was timely. The last two questions continued in the same line of questioning as the first question, to which defense counsel objected. *See Flanagan,* 111 N.M. at 96, 801 P.2d at 678 ("When the prosecutor started this line of questioning, the public defender objected.... The court allowed all three questions and overruled defendant's objection to the line of questioning."); *cf. State v. Lucero,* 104 N.M. 587, 590, 725 P.2d 266, 269 (Ct.App.1986) (concluding that the objections made were not specific or timely when they went to the adequacy of the foundation and were not in regard to the specific testimony regarding the subject at hand). Thus, we conclude that Defendant preserved his arguments regarding the impropriety of the second and third questions.

### 2. General Rule

■ {15} In *Flanagan,* 111 N.M. at 97, 801 P.2d at 679, this Court established a "strict prohibition upon asking the defendant if another witness is 'mistaken' or 'lying.'" Such improper questioning is particularly prejudicial when the witness is asked to comment on the truthfulness of a law enforcement officer's testimony. *See State v. Duran,* 2006–NMSC–035, ¶¶ 19, 21, 140 N.M. 94, 140 P.3d 515. The reasons behind the rule are several. First, the defendant's opinion regarding the truthfulness of another witness

is irrelevant. *Id.* ¶ 19. In addition, this type of questioning can become a misleading argument to the jury that either the defendant or the witnesses are lying. *Flanagan,* 111 N.M. at 97, 801 P.2d at 679. Moreover, asking a witness to comment on the veracity of another witness encroaches on the jury's role to determine the credibility of witnesses. *Id.* Further, our Supreme Court has expressed particular concern that these types of questions distort the burden of proof by leaving the jury with the unfair impression that in order to acquit, they must determine that law enforcement officers are lying if their testimony is contrary to that of the defendant. *Duran,* 2006–NMSC–035, ¶¶ 19, 21, 140 N.M. 94, 140 P.3d 515. Finally, the Court recognized in *Duran* that " 'were they lying' questions" are not compatible with a prosecutor's duties because unfairly questioning a defendant to make him look bad in front of the jury is inconsistent with the prosecutor's duties to seek justice and ensure a fair trial. *Id.* ¶¶ 19–21.

■ {16} In imposing this restriction on a prosecutor's questioning in *Flanagan,* we discussed the scope. Generally, the rule does not preclude a good-faith attempt to clarify a defendant's testimony by asking about apparent inconsistencies in regard to testimony of other witnesses. *Flanagan,* 111 N.M. at 97, 801 P.2d at 679. Nor does the rule prohibit questioning designed to elicit an explanation for any such inconsistencies. *Id.*

### 3. Application to Our Case

■ {17} We begin our application of these principles to our case by reviewing the allegedly improper questioning:

Q. ([PROSECUTOR]) You're aware that after the officers conducted their investigation, they arrested you on a domestic violence charge, correct?

A. Yes.

Q. And that, in your opinion, was unfounded?

A. Yes.

Q. And then when they began to talk with you and they observed that [you had] bloodshot, watery eyes, and they thought you had slurred speech and they could

smell alcohol coming off of you, you think it was still unfounded that possibly you had been drinking and driving?

A. Yes.

Q. And when they asked you—I'm sorry, when you volunteered to the officers that you had in fact been drinking that night, you think it was still unfounded for the officers to continue with the DWI investigation?

[DEFENSE COUNSEL]: This goes beyond the scope of direct examination.

THE COURT: Overruled.

A. Can you repeat that question, please?

Q. ([PROSECUTOR]) Even after you volunteered to the officers that you had in fact been drinking alcoholic beverages that evening, you still think that, coupled with that and the fact that you had bloodshot, watery eyes and the fact that you had slurred speech and the fact that you smelled of alcohol, the officers were still incorrect in conducting a DWI investigation?

A. Actually, I didn't tell them I had anything to drink, I told them that my brother was drunk, and I couldn't believe that he was believing them, that's what I told him.

Q. So Officer Longobardi at least misled the jury, if not lied to them when he said this morning[—]when he said you volunteered—

[DEFENSE COUNSEL]: He's asked him to comment on another person's testimony. The testimony should stand alone without characterization from my client.

THE COURT: Overruled.

Q. ([PROSECUTOR]) Mr. Soto?

A. Maybe it's been such a long time, maybe he wrote it down wrong. I'm not calling him a liar.

Q. So you don't recall specifically what you said?

A. I do recall, yes, I do.

Q. You recall?

A. Yes, I do.

Q. If Officer Longobardi takes the stand like he did this morning, and tells us that you did tell him you had been drinking,

then Officer Longobardi is wrong; is that what your testimony is this afternoon?

A. I know that I didn't tell him that I was drinking.

Q. I understand that, sir, but that's not my question. My question is, was Officer Longobardi wrong when he testified what he did—said what he said this morning to this jury?

A. Yes.

{18} Our review of the testimony leads us to conclude that the prosecutor engaged in questioning that was prohibited. In the first question at issue, the prosecutor specifically used the word "lied" when he asked Defendant to comment on Officer Longobardi's testimony: "So Officer Longobardi at least misled the jury, if not lied to them when he said this morning[—]when he said you volunteered[?]" At this point, defense counsel objected, and the court overruled her objection. Defendant attempted to mitigate the situation by stating that maybe the officer "wrote it down wrong." Defendant further stated, "I'm not calling him a liar." Momentarily, the prosecutor again asked Defendant to characterize the officer's testimony: "[T]hen Officer Longobardi is wrong; is that what your testimony is this afternoon?" When Defendant again attempted to avoid stating that the officer was wrong by replying, "I know that I didn't tell him that I was drinking," the prosecutor repeated his question: "[W]as Officer Longobardi wrong when he testified what he did—said what he said this morning to this jury?" We equate characterizing Officer Longobardi's testimony as "wrong" with characterizing his testimony as "mistaken." *See Merriam–Webster's Collegiate Dictionary* 1275 (11th ed.2005) (defining "wrong" as "not according to truth or facts: INCORRECT" and defining "mistake" as "a wrong judgment: MISUNDERSTANDING"); *see also Flanagan*, 111 N.M. at 96–97, 801 P.2d at 678–79 (concluding that asking the criminal defendant if three eyewitnesses were "all mistaken" was improper and that the objection should have thus been sustained). Therefore, we conclude that the prosecutor's questioning was improper and that the trial court abused its discretion when failing to sustain defense counsel's ob-

jection. *See Duran*, 2006–NMSC–035, ¶ 24, 140 N.M. 94, 140 P.3d 515; *Flanagan*, 111 N.M. at 97, 801 P.2d at 679 (observing that "the impression communicated to the jury may be that either the witness or the defendant is lying" when a criminal defendant "is forced to characterize numerous witnesses, including police officers, as 'incorrect' or 'mistaken' ").

**4. Harmless Error**

{19} Because Defendant correctly objected to the prosecutor's line of questioning, the State carries the burden to show that any error was harmless beyond a reasonable doubt. *See Duran*, 2006–NMSC–035, ¶ 22, 140 N.M. 94, 140 P.3d 515; *State v. Pettigrew*, 116 N.M. 135, 142, 860 P.2d 777, 784 (Ct.App.1993) ("Even when error is of a constitutional dimension, it does not require reversal if it was harmless beyond a reasonable doubt."). Error in the admission of evidence is not harmless "if there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *State v. Torres*, 1999–NMSC–010, ¶¶ 51–53, 127 N.M. 20, 976 P.2d 20 (internal quotation marks and citation omitted). The State asserts that even if the questioning was improper, any resulting error was harmless because "[D]efendant's response tempered any prejudice that might have resulted from the improper question" and because overwhelming evidence exists to prove Defendant's guilt. We address each argument below.

**a. Defendant's Response**

{20} According to the State, Defendant was not prejudiced because "the question did not coax [D]efendant into accusing Officer Longobardi of lying"; rather, Defendant "offered another explanation for the discrepancy between his testimony and that of Officer Longobardi." *See Flanagan*, 111 N.M. at 97–98, 801 P.2d at 679–80 (concluding that the error was not reversible because the dangers inherent in such questioning were not evident; rather, in response to the questioning, the defendant provided an explanation for the pertinent inconsistencies in the testimony). We are not persuaded. We ob-

serve first that the State's analysis rests entirely on Defendant's response to the first question. Our resolution of the preservation issue, however, requires that we examine all three questions at issue. The State was persistent in making Defendant respond directly to the question as to whether Officer Longobardi was "wrong" when he testified in front of the jury. In response to the State's second question, Defendant tried to avoid stating that the officer was wrong by stating, "I know that I didn't tell him that I was drinking." The prosecutor responded as follows: "I understand that, sir, but that's not my question. My question is, was Officer Longobardi wrong when he testified what he did—said what he said this morning to this jury?" Finally, Defendant acquiesced and responded, "Yes." Defendant was not merely coaxed but forced to answer in the affirmative the State's improper questioning.

{21} Our review of the testimony reveals that while Defendant's response to the first question might be perceived as an alternative explanation for the inconsistency that arguably could prove helpful to a jury, the prosecutor's continued questioning was solely for the purpose of forcing Defendant to characterize the officer as mistaken or lying. The continued questioning does not appear to be a good-faith attempt to clarify Defendant's testimony, *see id.* at 97, 801 P.2d at 679, but rather amounted to a particularly prejudicial jury argument because Defendant was coerced into commenting on the truthfulness of Officer Longobardi's testimony. *Duran,* 2006–NMSC–035, ¶ 24, 140 N.M. 94, 140 P.3d 515 ("[I]t is particularly improper to ask the defendant to comment on the veracity or credibility of law enforcement officers, as it may lead the jury to believe that they cannot acquit the defendant unless they believe the officer is lying."). Consequently, we reject the State's argument that in this case, any improper questioning resulted in harmless error. The responses did not cure the error; the prosecutor's questions resulted in Defendant's looking "bad in front of the jury." *See id.* ¶ 19 (internal quotation marks and citation omitted). Finally, because our resolution of this issue is clearly supported by New Mexico law, we are not persuaded otherwise by the out-of-state cases relied on by the State. *See, e.g., Knowles v. State,* 632 So.2d 62, 66 (Fla.1993) (concluding that the improper questioning was harmless error because the jury could have believed both the defendant and the witnesses, since the defendant testified that he did not remember making the statements); *State v. Manning,* 270 Kan. 674, 19 P.3d 84, 100, 103 (2001) (concluding that when the defendant failed to object in the court below, the improper questioning did not rise to the level of prejudice necessary under a plain error analysis).

### b. Overwhelming Evidence

{22} The State also argues that error was harmless because overwhelming evidence existed to prove Defendant's guilt. Harmless error requires the following: (1) substantial evidence must exist to support the conviction without including the improperly admitted evidence, (2) a disproportionate volume of permissible evidence must exist such that the "improper evidence will appear so minuscule that it could not have contributed to the conviction," and (3) no substantial conflicting evidence can exist to discredit the State's permissible testimony. *See State v. Barragan,* 2001–NMCA–086, ¶ 19, 131 N.M. 281, 34 P.3d 1157.

{23} Here, the first prong of the harmless error analysis is satisfied because, as discussed later in this opinion, sufficient evidence exists to support Defendant's conviction. The State fails to meet its burden, however, in regard to the second and third prongs of the analysis. Under the facts of this case, we cannot conclude that the permissible evidence was so great that the improper questioning was minuscule in comparison. The State relies on the following facts to argue that its evidence was overwhelming. Officers Longobardi and Piatt observed Defendant driving. After Officer Longobardi arrested Defendant for domestic violence, the officer observed that Defendant had slurred speech; red, bloodshot, and watery eyes; and a very strong odor of alcohol on his breath. Officer Longobardi testified that Defendant admitted he had been drinking at his mother's apartment. Officer Piatt observed several open cans of beer at the apartment of Defendant's mother. Although

Officer Piatt spent very little time with Defendant, the officer concluded that Defendant had been drinking. Defendant refused to consent to a breath test. The bulk of the State's evidence rests on Officer Longobardi's testimony, and the improper questioning directly reflected on the credibility of that testimony. Thus, the improper questioning was not "so minuscule that it could not have contributed to the conviction." *See id.; see also State v. Fairweather*, 116 N.M. 456, 461, 863 P.2d 1077, 1082 (1993) (concluding that the error was not harmless because the only other evidence consisted of testimony by the defendant and the complainants and that credibility was thus a "pivotal issue at trial"); *Clark v. State*, 112 N.M. 485, 487, 816 P.2d 1107, 1109 (1991) (stating that the admission of evidence in a criminal trial is not harmless if there is a reasonable possibility that the evidence may have contributed to the conviction).

{24} Moreover, substantial evidence exists to discredit the State's evidence. Defendant's testimony directly contradicted Officer Longobardi's assertion that Defendant admitted to drinking. Defendant testified that he did not admit to drinking but, rather, told Officer Longobardi that Defendant's brother was drunk. In addition, Officer Piatt testified that other people had been drinking at the apartment where he observed the beer cans, including Defendant's brother and two men who were sleeping when Officer Piatt entered the apartment. Further, Defendant explained why he refused to take the breath test, and he asserted that he didn't think he would have tested over the legal limit if he had taken the breath test. The State has failed to meet its burden under the third prong because substantial evidence existed to discredit the State's testimony. *See State v. Tave*, 1996–NMCA–056, ¶ 17, 122 N.M. 29, 919 P.2d 1094 (concluding that substantial conflicting testimony existed such that the outcome depended solely on which witnesses the jury found to be more credible); *State v. Pacheco*, 110 N.M. 599, 603–04, 798 P.2d 200, 204–05 (Ct.App.1990) ("The record reflects both exculpatory testimony and a number of discrepancies in the state's evidence that could have led to an acquittal."). "The State's burden is to prove beyond a reason-

able doubt that the error was harmless, and the fact that the error might have been harmless is not sufficient to satisfy that burden." *Tave*, 1996–NMCA–056, ¶ 17, 122 N.M. 29, 919 P.2d 1094 (emphasis, internal quotation marks, and citation omitted). We therefore cannot conclude that error was harmless. Under the facts of this case, the State has failed to carry its burden to show that the prosecutor's line of questioning in regard to the veracity and credibility of Officer Longobardi's testimony was harmless beyond a reasonable doubt. *See Duran*, 2006–NMSC–035, ¶ 22, 140 N.M. 94, 140 P.3d 515.

**B. Admission of Defendant's MVD Driving Record**

{25} Defendant also challenges his conviction for driving with a revoked or suspended license. Defendant argues that the MVD records should not have been admitted under the public records exception because the computer printout of Defendant's driving record was untrustworthy on its face and because Officer Longobardi testified that the printout appeared to be incomplete when compared to the computer check he ran at the time of Defendant's arrest. Defendant further argues that admission of the printout was "not harmless, as the prosecutor himself recognized in his statement that there was no other way to prove that [Defendant's] license 'was in fact suspended at the time of the offense.'" We are not convinced.

{26} The State moved to admit the MVD packet into evidence to show that Defendant's license had been suspended for ten years, as of September 3, 1996, and that his license was thus invalid on the date of his arrest. As we discussed in the Background section of this opinion, the computer printout contained in the MVD packet stated that Defendant's license was suspended on September 3, 1996, which is identified as the "Begin Date." The "End Date" for this particular suspension is noted as September 3, 2096. Over objection of defense counsel, the court admitted the records for the limited purpose of establishing the start date of Defendant's suspension. Defendant appears to argue that the trial court cannot admit a public record for a limited purpose because

"[a] public record cannot be just half-trustworthy."

{27} The rationale behind the public records exception is that this type of record, like the exception for records made in the regular course of business, "should be admissible despite the hearsay rule where the sources of information and the method of preparation indicate trustworthiness." *State v. Ramirez*, 89 N.M. 635, 644–45, 556 P.2d 43, 52–53 (Ct.App.1976) (emphasis omitted), *overruled on other grounds, Sells v. State*, 98 N.M. 786, 788, 653 P.2d 162, 164 (1982); *see also State v. Blakley*, 90 N.M. 744, 748, 568 P.2d 270, 274 (Ct.App.1977) (ruling that certified public records concerning the revocation of the defendant's driver's license were admissible). A foundation is ordinarily unnecessary when introducing a public record into evidence because a public official is presumed to properly perform his duty and because it is thus more likely that the public record will be accurate. *Ramirez*, 89 N.M. at 645, 556 P.2d at 53. However, when questions are "raised about the manner in which the record was made or kept" or when other "sufficient negative factors are present," a determination of trustworthiness must be made by the trial court before admitting the record. *Id.* (emphasis, internal quotation marks, and citation omitted); *see also* Rule 11–803(H) NMRA (describing the public records exception). When a question is raised about the trustworthiness of a public record, the court may consider surrounding factors to determine trustworthiness. *See Ramirez*, 89 N.M. at 645, 556 P.2d at 53. The trial court does not abuse its discretion by admitting the record if "surrounding factors indicate sufficient reliability." *Id.*

{28} Defendant relies on *State ex rel. Reynolds v. Holguin*, 95 N.M. 15, 618 P.2d 359 (1980), in support of his argument. Our Supreme Court discussed the public records exception in the civil context in *Reynolds*. The appellant in *Reynolds* appealed the trial court's exclusion of an aerial photograph introduced for the purpose of establishing the date on which the photograph was taken. *Id.* at 16–17, 618 P.2d at 360–61. The photograph was admitted for certain purposes but excluded for the purpose of proving the flight date because there was no statement on the face of the photograph regarding the date and because the appellant failed to produce sufficient verification of the date. *Id.* at 17–19, 618 P.2d at 361–63. The Supreme Court affirmed the trial court's decision barring admission for establishing the date but permitting the same exhibit for other purposes. *Id.* at 19, 618 P.2d at 363.

{29} We are not persuaded that *Reynolds* supports Defendant's argument. Rather, we conclude that like the court in *Reynolds*, the trial court here did not abuse its discretion by admitting the computer printout for a limited purpose. *See id.* at 17, 19, 618 P.2d at 361, 363. In our case, surrounding factors supported the court's determination that the printout was reliable for the limited purpose. *See id.* at 19, 618 P.2d at 363. Defendant admitted that his driver's license was revoked at the time of his arrest, and Officer Longobardi testified that the computer check he ran at the time of arrest indicated that Defendant's license was revoked. Thus, we conclude that the trial court did not abuse its discretion by admitting the computer printout for the limited purpose of establishing the start date of Defendant's license suspension. *See State v. Stampley*, 1999–NMSC–027, ¶ 37, 127 N.M. 426, 982 P.2d 477 ("Admission or exclusion of evidence is a matter within the discretion of the trial court and the court's determination will not be disturbed on appeal in the absence of a clear abuse of that discretion." (internal quotation marks and citation omitted)); *see also State v. Roybal*, 107 N.M. 309, 310, 756 P.2d 1204, 1205 (Ct.App.1988) ("In a bench trial, the trial court is presumed to have disregarded improper evidence, and erroneous admission of evidence is not reversible error unless it appears the trial court must have relied on it in reaching its decision.").

{30} Defendant also relies on *Beane v. Commonwealth*, No. 85–CA–2161–DG, 1986 Ky. Ct.App. LEXIS 1191 (Aug. 1, 1986), in support of his argument. *See id.,* at —— 1, 5–7 (reversing the defendant's jury conviction for driving with a suspended license because the driver's record was the only evidence offered to show that the license was suspended and because the defendant offered

evidence creating a question as to the reliability of that record). In our case, Defendant's admission that his driver's license was revoked provided evidence, apart from the challenged record, sufficient to prove this element of the crime charged. Because the facts in our case are different from those in *Beane*, its holding does not apply. Thus, *Beane* is not helpful in our consideration of the instant case.

## C. Sufficient Evidence to Support Defendant's Conviction

{31} Defendant also argues that the evidence was insufficient to support his conviction for aggravated DWI. The jury was instructed that it must find the following elements true beyond a reasonable doubt in order to convict Defendant of aggravated DWI:

1. [D]efendant drove a motor vehicle;

2. At the time, [D]efendant was under the influence of intoxicating liquor; that is, as a result of drinking liquor[, D]efendant was less able to the slightest degree, either mentally or physically, or both, to exercise the clear judgment and the steady hand necessary to handle a vehicle with safety to the person and the public;

3. [D]efendant refused to submit to a chemical test;

4. This happened in New Mexico on or about the 16th day of July, 2003.

*See* NMSA 1978, § 66–8–102(D)(3) (2005); UJI 14–4508 NMRA.

{32} Defendant argues that the officers observed in Defendant's driving or other personal behaviors no irregularities that might indicate intoxication. He contends that Officer Longobardi's allegations are unsupported because he failed to conduct any field sobriety tests, even though Defendant was cooperative. Defendant also asserts that he offered a plausible explanation for declining the breath test, that Officer Longobardi admitted that other explanations may exist for the condition of Defendant's eyes and speech, and that Officer Longobardi admitted that the odor of alcohol did not indicate the amount of alcohol consumed. In summary, Defendant argues that in most cases, the courts have required much more evidence

than exists here to prove each element beyond a reasonable doubt.

{33} Defendant relies on the following cases: *Caudillo*, 2003–NMCA–042, ¶ 8 (stating that the evidence was sufficient to support a conclusion that the defendant was impaired when the defendant was involved in an accident, admitted to having drunk a few beers, and refused to take a blood alcohol test and when the officers noticed slurred speech and a strong odor of alcohol); *State v. Sanchez*, 2001–NMCA–109, ¶¶ 15–16, 131 N.M. 355, 36 P.3d 446 (concluding that the evidence was sufficient when the defendant admitted to having been drinking, refused to perform field sobriety tests, was " 'babbling' " while at the scene, demanded to be taken to jail, and kicked the patrol car when he was placed inside and when the officer noticed bloodshot, watery eyes and a smell of alcohol); *State v. Jones*, 1998–NMCA–076, ¶ 10, 125 N.M. 556, 964 P.2d 117 (concluding that the officer had probable cause to arrest the defendant for DWI when he hit another car from behind, admitted to having drunk two beers, swayed when he was talking to the officer, and failed the field sobriety tests and when the officer noticed bloodshot, watery eyes, slurred speech, and a strong odor of alcohol); *State v. Ruiz*, 120 N.M. 534, 535, 540, 903 P.2d 845, 846, 851 (Ct.App.1995) (concluding that the evidence was sufficient when the defendant was speeding and weaving, refused to stop for four blocks, admitted to having been drinking, and gave a false name at the scene; when the officer noticed bloodshot, watery eyes, slurred speech, and a smell of alcohol; and when the results of the field sobriety tests were mixed); and *State v. Hernandez*, 95 N.M. 125, 126, 619 P.2d 570, 571 (Ct.App.1980) (concluding that probable cause for arrest existed when the officer responded to a call reporting that the defendant had been drinking, was causing trouble at a residence, and was leaving with a small child in the car and when the officer noticed slurred speech and a smell of alcohol).

{34} We agree that the evidence in many of the cases relied on by Defendant is greater than that present under the facts of this case. We cannot agree, however, that the jury's verdict was not supported by sufficient

evidence. Based on the facts in this case, the jury was entitled to find that Defendant, as a result of drinking liquor, was driving while "less able to the slightest degree, either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety to the person and the public." *See* UJI 14–4508. As discussed in sections I.A and III.A.4.b of this opinion, the record reveals the following facts. Officers Longobardi and Piatt observed Defendant driving. After Officer Longobardi arrested Defendant for domestic violence, the officer observed that Defendant had red, bloodshot, and watery eyes, as well as slurred speech and a very strong odor of alcohol on his breath. Officer Longobardi testified that Defendant admitted he had been drinking at his mother's apartment. Officer Piatt observed several open cans of beer at the apartment of Defendant's mother. Officer Piatt concluded that Defendant had been drinking, and Officer Longobardi opined that Defendant was under the influence of alcohol. In addition, Defendant does not dispute that he refused to consent to a blood alcohol test. A jury may infer Defendant's consciousness of guilt and fear of the test results from Defendant's refusal to take a breath test. *See McKay v. Davis,* 99 N.M. 29, 32, 653 P.2d 860, 863 (1982); *Caudillo,* 2003–NMCA–042, ¶ 8. Moreover, the jury is free to disregard Defendant's testimony denying his admission of drinking and explaining his refusal to take the breath test. *See Rojo,* 1999–NMSC–001, ¶ 19, 126 N.M. 438, 971 P.2d 829 ("Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject Defendant's version of the facts."). From these facts, a rational jury could infer that Defendant was driving under the influence of intoxicating liquor. Viewing the facts and indulging in all permissible inferences in favor of the verdict, we conclude that sufficient evidence existed to prove beyond a reasonable doubt each element of the crime charged. *See* § 66–8–102(D)(3).

## IV. CONCLUSION

{35} We hold that the prosecutor improperly questioned Defendant in regard to the veracity of the officer's testimony and that the trial court's failure to sustain Defendant's objection was reversible error. We further rule that the trial court did not abuse its discretion by admitting the computer printout from the MVD packet into evidence for a limited purpose. Finally, we conclude that sufficient evidence existed from which a rational jury could infer that Defendant was driving while under the influence of intoxicating liquor. Accordingly, we reverse Defendant's conviction for DWI and remand for a new trial, and we affirm Defendant's conviction for driving with a revoked or suspended license.

{36} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN, Chief Judge and MICHAEL D. BUSTAMANTE, Judge.