This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40865**

**STATE OF NEW MEXICO,**

  Plaintiff-Appellee,

v.

**JUAN CARLOS ESCAMILLA CARDONA,**

  Defendant-Appellant.

**APPEAL FROM THE METROPOLITAN COURT OF BERNALILLO COUNTY**
**Yvette K. Gonzales, Metropolitan Court Judge**

Raúl Torrez, Attorney General
Lee Green, Assistant Solicitor General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Mark A. Peralta-Silva, Assistant Appellate Defender
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**DUFFY, Judge.**

**{1}** Following a bench trial in metropolitan court, Defendant was convicted of aggravated driving under the influence of intoxicating liquor (aggravated DWI) in violation of NMSA 1978, Section 66-8-102(D)(3) (2016), and failure to maintain a traffic lane in violation of NMSA 1978, Section 66-7-317(A) (1978). On appeal, Defendant asserts that the State presented insufficient evidence to support either offense. We affirm in part and reverse in part.

**DISCUSSION**

**{2}** "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Duran*, 2006-NMSC-035, ¶ 5, 140 N.M. 94, 140 P.3d 515 (internal quotation marks and citation omitted). "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We will not "re-weigh the evidence to determine if there was another hypothesis that would support innocence or replace the fact-finder's view of the evidence with the appellate court's own view of the evidence." *State v. Garcia*, 2005-NMSC-017, ¶ 12, 138 N.M. 1, 116 P.3d 72.

## I.      Aggravated DWI

**{3}** To convict Defendant of aggravated DWI, the State was required to prove that (1) Defendant operated a motor vehicle; (2) at that time Defendant "was under the influence of intoxicating liquor," meaning that "as a result of drinking liquor [D]efendant was less able to the slightest degree, either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety to the person and the public"; and (3) Defendant "refused to submit to chemical testing." *See* UJI 14-4508 NMRA; *see also* § 66-8-102(D)(3) (stating that aggravated DWI consists of "refusing to submit to chemical testing . . . and in the judgment of the court, based upon evidence of intoxication presented to the court, the driver was under the influence of intoxicating liquor or drugs"). Defendant contests only the second element, whether the State presented sufficient evidence to show that he was impaired to the slightest degree.

**{4}** The State offered evidence of impairment though the arresting officer's testimony about the traffic stop and Defendant's performance on four standardized field sobriety tests (SFSTs), along with lapel camera footage of the same. We understand Defendant to argue that his poor performance on the SFSTs can be explained by the following: (1) his diabetes, which affected his balance, and a language barrier that made it difficult for Defendant to explain to the officer how his diabetes affected his ability to balance, and (2) the language barrier made it difficult for Defendant to understand the officer's instructions because Defendant's primary language is Spanish.

**{5}** As to Defendant's first argument, during the traffic stop Defendant told the officer that he is a diabetic and explained that this could affect his ability to balance due to taking insulin and his blood sugar levels. To the extent Defendant contends that the language barrier prevented him from fully explaining to the officer why diabetes affected his balance, we note that Defendant was able to communicate during the stop that his blood sugar can affect his balance, and Defendant does not indicate what additional information he would have provided had he been permitted to communicate in Spanish. To the extent Defendant argues that his diabetes in fact impacted his performance on the SFSTs, we observe that Defendant was given an alternate field sobriety test to

accommodate his stated condition, which he failed, and was offered additional alternative tests, which he refused.

**{6}** Turning to Defendant's second argument, Defendant notes that the lapel camera footage shows he started the walk-and-turn test only to be told to start over, and after a few failed attempts, Defendant stated that he didn't "get it." When the officer asked him if he understood, Defendant said, "A little bit." Even so, the trial court observed that Defendant did what the officer asked him to do, which indicated to the trial court that Defendant understood the officer's instructions well enough to comply. Likewise, Defendant immediately and repeatedly refused to take a breath test when asked to do so by the officer. Consequently, we are not persuaded that Defendant's performance on the SFSTs should be deemed inconclusive because of a medical condition or a language barrier, and we conclude that his performance could properly be considered by the fact-finder as evidence of impairment.

**{7}** Beyond Defendant's performance on the SFSTs, the State presented additional evidence of Defendant's impairment, including the officer's observations that Defendant had bloodshot, watery eyes, smelled of alcohol, slurred speech, admitted to having consumed two alcoholic beverages, as well as Defendant's refusal to submit to a blood alcohol test. This Court has concluded that similar factual presentations were sufficient to support a conviction for aggravated DWI. *See State v. Soto*, 2007-NMCA-077, ¶ 34, 142 N.M. 32, 162 P.3d 187 (concluding the evidence was sufficient to uphold the conviction where defendant had red, bloodshot, watery eyes, slurred speech, a strong odor of alcohol, and admitted to consuming alcohol), *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, 142 N.M. 32, 275 P.3d 110; *State v. Marquez*, 2009-NMSC-055, ¶ 4, 147 N.M. 386, 223 P.3d 931 (upholding the conviction where evidence was introduced that defendant had bloodshot watery eyes, smelled of alcohol, and showed signs of impairment during the SFSTs), *overruled on other grounds by Tollardo*, 2012-NMSC-008, ¶ 37 n.6. As well, Defendant's refusal to submit to a blood alcohol test provided additional support for the verdict because it allowed the trial court to infer Defendant's consciousness of guilt. *See Soto*, 2007-NMCA-077, ¶ 34.

**{8}** Based on the evidence discussed above, we conclude the State presented sufficient evidence to demonstrate that Defendant was impaired to the slightest degree, and therefore affirm Defendant's conviction for aggravated DWI.

## II. Failure to Maintain a Traffic Lane

**{9}** We turn now to the second issue raised by Defendant: whether there was sufficient evidence presented to find Defendant guilty of failing to maintain a traffic lane. We conclude there was not.

**{10}** To convict Defendant of failing to maintain a lane, the State was required to prove that Defendant operated his vehicle in violation of Section 66-7-317(A), which provides:

> Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others consistent herewith shall apply:
>
> A. a vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.

**{11}** This Court has previously determined that Section 66-7-317(A) does not establish a strict per se violation whenever a driver drives on or over a lane line. *State v. Siqueiros-Valenzuela*, 2017-NMCA-074, ¶¶ 15, 18, 404 P.3d 782 ("[A] driver may momentarily leave [their] lane of travel without violating the statute."). Whether there has been a violation "requires a fact-specific inquiry into the particular circumstances present during the incident in question to determine whether the driver could reasonably be expected to maintain a straight course at that time in that vehicle on that roadway." *Id.* ¶ 19 (alteration, internal quotation marks, and citation omitted). "This totality of the circumstances analysis takes into account whether there were any weather conditions, road features, or other circumstances that could have affected or interfered with a driver's ability to keep his or her vehicle in a single lane." *Id.*

**{12}** In this case, the only evidence offered in support of the charge was the officer's testimony that he observed Defendant's vehicle driving westbound on Montgomery, in Albuquerque, New Mexico, near the Hilton Place intersection, and saw the right tires go over the right lane line by approximately six inches. The officer further testified that when speaking with Defendant during the stop, Defendant told the officer that he drifted out of his lane because he was going to turn.

**{13}** The trial court noted that the officer indicated he had cited Defendant for failing to maintain a traffic lane because of the six-inch drifting and appears to have relied exclusively on evidence of the six-inch drift in finding that Defendant had violated Section 66-7-317(A). Thus, on this record, it appears that the trial court considered Defendant's act of crossing the lane line to be a per se violation of Section 66-7-317(A), contrary to the approach articulated in *Siqueiros-Valenzuela*, 2017-NMCA-074, ¶ 21. There is no indication that the State presented or the trial court considered evidence demonstrating that Defendant's six-inch crossing of the right-hand lane line was not "feasibly and safely executed under the totality of the circumstances." *Id.* ¶ 22. The State does not point to such evidence in its answer brief or otherwise advocate that the conviction is supportable under the totality of the circumstances. Consequently, in light of the standard articulated in *Siqueiros-Valenzuela*, we hold that insufficient evidence was presented to support Defendant's conviction for failing to maintain a traffic lane.

## CONCLUSION

**{14}** For the foregoing reasons, we affirm Defendant's conviction for aggravated DWI and reverse his conviction for failure to maintain traffic lane. We remand to the

metropolitan court with instructions to vacate Defendant's conviction for failure to maintain traffic lane and resentencing as necessary.

**{15} IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**ZACHARY A. IVES, Judge**

**GERALD E. BACA, Judge**