IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2009-NMSC-055

Filing Date:  November 18, 2009

Docket No. 31,294

STATE OF NEW MEXICO,

        Plaintiff-Respondent,

v.

REYES MARQUEZ,

        Defendant-Petitioner.

ORIGINAL PROCEEDING ON CERTIORARI
Denise Barela Shepherd, District Judge

Hugh W. Dangler, Chief Public Defender
Adrianne R. Turner, Assistant Appellate Defender
Santa Fe, NM

for Petitioner

Gary K. King, Attorney General
Andrew S. Montgomery, Assistant Attorney General
Santa Fe, NM

for Respondent

## OPINION

**MAES, Justice.**

{1}     Following a jury trial, Reyes Marquez (Defendant) was convicted of driving while under the influence of intoxicating liquor (DWI) contrary to NMSA 1978, Section 66-8-102(A) (2005, prior to 2008 amendments).  The Court of Appeals affirmed Defendant's conviction, concluding in relevant part that (1) the evidence was sufficient to establish that Defendant had been driving while impaired by alcohol to the slightest degree, and (2) although scientific testimony correlating Defendant's performance on three field sobriety tests with a ninety percent probability of a blood alcohol content (BAC) at or above the legal

1

limit of .08 improperly had been admitted, the evidentiary error was harmless. *State v. Marquez*, 2008-NMCA-133, ¶¶ 15-25, 145 N.M. 31, 193 P.3d 578. We agree with the Court of Appeals that the evidence was sufficient to support Defendant's conviction, but disagree that the evidentiary error was harmless. Accordingly, we reverse Defendant's conviction and remand the present case for a new trial.

## I.    FACTS AND PROCEDURAL HISTORY

{2}    At approximately 12:50 a.m. on June 17, 2005, Defendant left a bar located on Montgomery Boulevard in Albuquerque, New Mexico. Benjamin Kirby, an officer with the Albuquerque Police Department, noticed that Defendant had "somewhat of a stagger to his step, and he . . . didn't seem to have his balance about him." Officer Kirby warned Defendant that "he shouldn't be driving." Although Defendant did not explicitly acknowledge Officer Kirby's statement, he "looked at [Officer Kirby] as if he saw what [he] said, or understood what [he] said."

{3}    Soon thereafter, Officer Kirby observed a white Ford truck pull into the parking lot at the same time that a red pickup truck was backing out of its parking space. Officer Kirby noticed that the white Ford truck accelerated at a very high rate of speed, as if to avoid a collision. After the danger of a collision had passed, the red pickup truck "stab[bed] the brake real hard as if, oh, there was somebody there kind of thing." The red pickup truck continued driving in reverse for approximately sixty feet and entered oncoming traffic on Montgomery Boulevard. Because Montgomery Boulevard is a "pretty dangerous street," Officer Kirby radioed dispatch to report the suspicious vehicle.

{4}    Kelly Enyart, an officer with the DWI unit of the Albuquerque Police Department, was driving on Montgomery Boulevard when she received the call from dispatch. She made a U-turn and observed the red pickup truck pull into oncoming traffic while traveling in reverse. Officer Enyart pulled over the red pickup truck in a parking lot. She noticed that the driver, Defendant, had "bloodshot watery eyes," smelled of alcoholic beverage, and had "fumbling fingers" while searching for his driver's license, registration, and proof of insurance. She asked Defendant whether he had consumed any alcoholic beverages that evening, and Defendant admitted that he had drank two beers. Officer Enyart noticed that Defendant's speech was slurred. At this point, Officer Kirby approached the vehicle and recognized Defendant as the individual whom he had warned earlier in the evening not to drive.

{5}    Officer Enyart asked Defendant to exit the vehicle and perform a series of field sobriety tests. Prior to administering the tests, she ensured that the area was flat, dry, well lit, and free of debris. Additionally, Officer Enyart asked Defendant whether he had any medical problems that might impede his ability to take tests that require walking or balancing. Defendant indicated that he did not.

{6}    Officer Enyart noticed that, when Defendant exited his vehicle, he was slow to

2

respond and had to put his hand on the vehicle to maintain his balance. During the horizontal gaze nystagmus (HGN) test, Defendant failed to follow instructions and swayed noticeably backward and forward. During the walk and turn test, Officer Enyart had to repeat her instructions many times. Despite her thorough explanation of the test, Defendant failed to follow instructions and exhibited five out of eight clues. At this point, Defendant informed Officer Enyart that he had walking and balancing problems due to a recent military deployment in Iraq. Defendant was unable, however, to identify anything about his service in Iraq that would have caused walking and balancing problems. Lastly, Officer Enyart administered the one leg stand test, during which Defendant exhibited three out of four clues.

{7} Thereafter, Officer Enyart arrested Defendant for DWI. Although Defendant initially agreed to submit to a breath alcohol test, he subsequently refused. Officer Enyart advised Defendant of the adverse consequences of his refusal under the Implied Consent Act, but Defendant nonetheless refused to take the test. Accordingly, Defendant was charged by complaint in metropolitan court with aggravated DWI contrary to Section 66-8-102(D)(3). Section 66-8-102(D)(3) ("Aggravated driving while under the influence of intoxicating liquor or drugs consists of a person who . . . refused to submit to chemical testing, as provided for in the Implied Consent Act, and in the judgment of the court, based upon evidence of intoxication presented to the court, was under the influence of intoxicating liquor or drugs.").

{8} At trial, Officer Enyart testified that studies conducted by the National Highway Traffic Safety Administration (NHTSA) have found correlations between the clues observed during the administration of field sobriety tests and subsequent chemical tests. The prosecutor asked Officer Enyart to explain these correlations, and Defendant objected based on the lack of an adequate foundation. The metropolitan court overruled Defendant's objection and Officer Enyart testified that

> [t]he studies that have been done—there's three specific studies that were done with these field sobriety tests. They've been done in Colorado, Florida, and San Diego. And, what they found is that these clues that we look for—on the walk and turn test, if somebody exhibits two or more of the eight clues, that there's a sixty-eight percent chance that they are at or above a point zero eight on their chemical test, be that a breath or a blood test. On the one-leg-stand test, they have found that if a person exhibits two or more out of those four clues, there's a sixty-five percent that their—on their chemical test, it will be at or above a point zero eight, either BAC or BRAC, depending if it's a blood test or a breath test.

The prosecutor asked Officer Enyart, "What if you put all three of the tests together?" Defendant objected, and a bench conference ensued. The metropolitan court overruled Defendant's objection, and the prosecutor repeated his question, "Under NHTSA, if you look at the clues with these three tests, what is the probability that the (inaudible) would be at or above the legal limit?" Officer Enyart explained that "[d]epending on which study you look

3

at, it's in the ninetieth percentile."

**{9}** Defendant took the stand and offered his own testimony with respect to the events of the evening in question. Defendant admitted that he had consumed two beers within a two to three hour time period, but explained that he had not felt impaired to even the slightest degree. He informed the jury that he had not stumbled while exiting the bar and that he had neither seen nor heard Officer Kirby while walking to his truck. With respect to the near collision in the parking lot, Defendant testified that the white truck had pulled into the parking lot "like a bat out of hell" and that he had hit the brakes in order to avoid a collision. Defendant disputed Officer Enyart's testimony that he had performed poorly on the field sobriety tests, testifying that he "didn't have any problems falling or leaning over or anything." Defendant explained that, during his encounter with Officer Enyart, she was "angry" and "aggressive." Indeed, Defendant testified that he refused to take the breath alcohol test because he "was very upset with [Officer Enyart]. [He] felt like no matter what [he] did, she was going to charge [him] with something, by the way she treated [him]."

**{10}** On the basis of the foregoing evidence, the jury found Defendant not guilty of the crime of aggravated DWI, but guilty of the lesser included offense of DWI. Defendant appealed his conviction to the district court, claiming that (1) the metropolitan court had violated Rule 7-506 NMRA by not providing Defendant with a trial within 182 days of the date of his arraignment, (2) the metropolitan court improperly had admitted Officer Enyart's scientific testimony correlating Defendant's performance on the field sobriety tests with a BAC at or above the legal limit of .08, and (3) the evidence was insufficient to support his conviction. The district court affirmed Defendant's conviction.

**{11}** Defendant appealed from the judgment of the district court to the Court of Appeals, which affirmed Defendant's conviction in a divided opinion. *Marquez*, 2008-NMCA-133, ¶ 26. The Court determined that the metropolitan court's failure to try Defendant within the 182 day time period set forth in Rule 7-506 was justified by exceptional circumstances. *Id.* ¶¶ 9-14. The Court further determined that "a reasonable mind could accept the . . . evidence [adduced at trial] as adequate to support a finding beyond a reasonable doubt that Defendant was impaired by alcohol to the slightest degree." *Id.* ¶ 18 (internal quotation marks and citation omitted). Lastly, the Court held that, although the metropolitan court improperly had admitted Officer Enyart's scientific testimony without an adequate foundation, the evidentiary error was harmless because (1) substantial evidence existed to support Defendant's conviction without reference to Officer Enyart's improperly admitted testimony; (2) "the testimony as to Defendant's driving, signs of intoxication, admission of drinking, performance on the [field sobriety tests], and refusal to take a breath test constitute overwhelming evidence of his guilt when compared to the improperly admitted testimony"; and (3) there was no substantial evidence to discredit the State's testimony regarding Defendant's impairment. *Id.* ¶¶ 23-24. Additionally, the Court noted that Defendant's BAC is not an essential element of the crime of DWI, and, therefore, the improperly admitted evidence "could not have contributed to Defendant's conviction because it was not relevant to any fact the jury was asked to decide." *Id.* ¶ 25.

4

**{12}** Judge Kennedy agreed with the majority that Officer Enyart's testimony improperly had been admitted, but disagreed that the error was harmless. *Id.* ¶¶ 28, 32 (Kennedy, J., concurring in part and dissenting in part). He noted that "[s]tatistical testimony that lacks foundation and that can clearly distract the jury from its function of weighing the proper evidence of guilt encourages a departure from the legitimate elements of proof." *Id.* ¶ 32. In light of the high statistical probability cited in Officer Enyart's testimony, and the explicit connection between a BAC at or above the legal limit and the crime of DWI, Judge Kennedy did not believe that the jury could "separate a proper basis for finding guilt from the improper one presented by the State." *Id.* Because the improperly admitted evidence "invade[d] the jury's ability to sufficiently decide the true facts," Judge Kennedy concluded that the error was "harmful to a point that should require retrial." *Id.* ¶ 33.

**{13}** We granted Defendant's petition for writ of certiorari pursuant to NMSA 1978, Section 34-5-14(B) (1972) and Rule 12-502 NMRA to determine whether (1) there was sufficient evidence to support Defendant's DWI conviction, and (2) the improper admission of Officer Enyart's scientific testimony was harmful error, necessitating a new trial. *State v. Marquez*, 2008-NMCERT-009, 145 N.M. 258, 196 P.3d 489.

## II.    DISCUSSION

### A.    Sufficiency of the Evidence

**{14}** "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Gallegos*, 2009-NMSC-017, ¶ 30, 146 N.M. 88, 206 P.3d 993 (internal quotation marks and citation omitted). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Chavez*, 2009-NMSC-035, ¶ 11, 146 N.M. 434, 211 P.3d 891 (internal quotation marks and citation omitted).

**{15}** Section 66-8-102(A) provides that "[i]t is unlawful for a person who is under the influence of intoxicating liquor to drive a vehicle within this state." A defendant is "under the influence of intoxicating liquor" if "as a result of drinking liquor the defendant [is] less able to the slightest degree, either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety to the person and the public." UJI 14-4501 NMRA.

**{16}** Defendant admitted that he had consumed two alcoholic beverages prior to driving his vehicle. Officer Enyart testified that Defendant's eyes were bloodshot, his speech was slurred, and he smelled of alcohol. Additionally, the jury reasonably could have found that Defendant's judgment, balance, and reaction time were impaired in light of the evidence that (1) Defendant staggered out of the bar, (2) Defendant was slow to react to the near collision with the white pickup truck, (3) Defendant drove approximately sixty feet into a dangerous

street while traveling in reverse, (4) Defendant had "fumbling fingers," (5) Defendant was slow to respond when exiting his vehicle and had to brace himself against the vehicle for balance, and (6) Defendant performed poorly on the field sobriety tests. Moreover, Defendant refused to submit to a breath alcohol test, from which the jury reasonably could have inferred consciousness of guilt. *See State v. Soto*, 2007-NMCA-077, ¶ 34, 142 N.M. 32, 162 P.3d 187 ("A jury may infer Defendant's consciousness of guilt and fear of the test results from Defendant's refusal to take a breath test."). We conclude that the foregoing evidence is more than sufficient to support the jury's factual finding that Defendant had been impaired by alcohol to the slightest degree.

**{17}** Nonetheless, Defendant claims that the evidence was insufficient to support his DWI conviction because it was "equally consistent with not being impaired." However, it is well established that "[c]ontrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject Defendant's version of the facts." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 (filed 1998); *see also State v. Neal*, 2008-NMCA-008, ¶ 19, 143 N.M. 341, 176 P.3d 330 (filed 2007) ("The test is not whether substantial evidence would support an acquittal, but whether substantial evidence supports the verdict actually rendered."). Defendant further claims that Officers Kirby and Enyart were not credible witnesses in light of certain inconsistencies in their testimony. However, "under a substantial evidence review, [i]t is the exclusive province of the jury to resolve factual inconsistencies in testimony. We will not reweigh the evidence or substitute our judgment for that of the jury." *State v. Trujillo*, 2002-NMSC-005, ¶ 28, 131 N.M. 709, 42 P.3d 814 (alteration in original) (internal quotation marks and citation omitted); *see also State v. Hughey*, 2007-NMSC-036, ¶ 16, 142 N.M. 83, 163 P.3d 470 ("It is the role of the factfinder to judge the credibility of witnesses and determine the weight of evidence."). Accordingly, Defendant's claims lack merit and are rejected.

## B.    Harmless Error

**{18}** We next address Officer Enyart's testimony, which correlated Defendant's performance on the field sobriety tests with a ninety percent statistical probability of a BAC at or above the legal limit. It is well established that, "it is error to admit expert testimony involving scientific knowledge unless the party offering such testimony first establishes the evidentiary reliability of the scientific knowledge." *State v. Torres*, 1999-NMSC-010, ¶ 24, 127 N.M. 20, 976 P.2d 20; *see also* Rule 11-702 NMRA (governing the admission of expert testimony). In *Torres*, we held that "HGN testing involves scientific knowledge" and, therefore, "only a scientific expert may testify as to [HGN] results." 1999-NMSC-010, ¶ 46. We agree with the Court of Appeals that, in the present case, the State failed to "lay a sufficient foundation that a motorist's HGN test results, in combination with the walk and turn and one leg stand test results, are scientifically valid means to determine the motorist's BAC." *Marquez*, 2008-NMCA-133, ¶ 20. Accordingly, Officer Enyart's scientific testimony was improperly admitted in violation of Rule 11-702.

**{19}** The State concedes that Officer Enyart's testimony was improperly admitted, but

6

argues that the evidentiary error was harmless because (1) there was substantial evidence to support Defendant's DWI conviction, (2) the evidence of Defendant's guilt was overwhelming in comparison to the impermissible testimony, and (3) Defendant's version of events did not substantially discredit the State's evidence. Defendant responds that the evidentiary error was not harmless because "[t]here is a substantial risk that," rather than relying on the properly admitted evidence, "the jury improperly relied on the improper 'scientific testimony.'"

**{20}** Because the improper admission of Officer Enyart's scientific testimony violated the New Mexico Rules of Evidence, non-constitutional error review is appropriate. *State v. Barr*, 2009-NMSC-024, ¶ 53, 146 N.M. 301, 210 P.3d 198 ("[W]here a defendant has established a violation of statutory law or court rules, non-constitutional error review is appropriate."). "[N]on-constitutional error is reversible only if the reviewing court is able to say, in the context of the specific evidence presented at trial, that it is reasonably *probable* that the jury's verdict would have been different but for the error." *Id.* ¶ 54 (emphasis added) (clarifying the different standards of review for constitutional and non-constitutional error). However, "'[t]he inquiry . . . is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error.'" *Id.* ¶ 57 (quoting *Sullivan v. Louisiana,* 508 U.S. 275, 279 (1993)). "Accordingly, in some circumstances where, in our judgment, the evidence of a defendant's guilt is sufficient even in the absence of the trial court's error, we may still be obliged to reverse the conviction if the jury's verdict appears to have been tainted by error." *State v. Macias*, 2009-NMSC-028, ¶ 38, 146 N.M. 378, 210 P.3d 804.

**{21}** To determine whether the error in the present case was harmless, we must consider whether there is "(1) substantial evidence to support the conviction without reference to the improperly admitted evidence; (2) such a disproportionate volume of permissible evidence that, in comparison, the amount of improper evidence will appear minuscule; and (3) no substantial conflicting evidence to discredit the State's testimony." *Barr*, 2009-NMSC-024, ¶ 56 (footnote omitted). "No one factor is determinative; rather, they are considered in conjunction with one another. All three factors . . . provide . . . a reliable basis for determining whether an error is harmless." *Id.* ¶ 55.

**{22}** For the reasons explained in part II.A of this opinion, the evidence was more than sufficient to support Defendant's conviction without reference to Officer Enyart's improperly admitted scientific testimony. Defendant's admission that he had consumed alcohol before driving, his exhibition of signs of intoxication, his performance on the field sobriety tests, and his refusal to take a breath alcohol test, all provided a reasonable basis for the jury's factual finding that Defendant had been impaired by alcohol to the slightest degree.

**{23}** The second factor requires us to assess the impermissible evidence in light of the permissible evidence, the disputed factual issues, and the essential elements of the crime

charged. Our focus is not limited to the quantity of impermissible evidence, but, rather, encompasses the quality of that evidence and its likely impact on the jury. *See State v. Moore*, 94 N.M. 503, 505, 612 P.2d 1314, 1316 (1980) ("[A] trial can be prejudiced by testimony lasting but a fraction of a second . . . ."). In the present case, Defendant did not submit to a breath alcohol test, and, therefore, the State's evidence of intoxication was limited to the personal observations of Officers Kirby and Enyart and the results of the field sobriety tests. The impermissible evidence correlated Defendant's performance on the field sobriety tests with a ninety percent statistical probability of a BAC at or above the legal limit. In a DWI trial, the improper admission of scientific evidence indicating that Defendant was legally intoxicated at the time of driving will "almost certainly . . . tip the balance in favor of the State." *State v. Downey*, 2008-NMSC-061, ¶ 39, 145 N.M. 232, 195 P.3d 1244 (internal quotation marks and citation omitted); *see id.* ¶¶ 16, 39 (holding that the improper admission of expert testimony indicating that the defendant had a BAC in the range of .075 to .111 at the time of driving was not harmless); *Torres*, 1999-NMSC-010, ¶ 53 (holding that the improper admission of expert testimony regarding an HGN test was not harmless because "the State presented the HGN results to the jury as the most accurate indicator of [the defendant's] intoxication"); *State v. Gardner*, 1998-NMCA-160, ¶ 21, 126 N.M. 125, 967 P.2d 465 (holding that the improper admission of BAC evidence was not harmless); *but see State v. Gutierrez*, 1996-NMCA-001, ¶ 4, 121 N.M. 191, 909 P.2d 751 (holding that the improper admission of BAC evidence was harmless in light of the overwhelming evidence of guilt). We can perceive no reason to distinguish between the improper admission of a "definitive breath score," *Marquez*, 2008-NMCA-133, ¶ 24, and the improper admission of evidence revealing a high statistical probability of a breath or BAC at or above the legal limit, because both types of evidence are likely to impact the jury's verdict. *See Gardner*, 1998-NMCA-160, ¶ 21 ("[W]hen the only scientific evidence presented at [a DWI] trial was admitted in error, the court cannot say that the effect is harmless."). Accordingly, we conclude that the impermissible evidence was not minuscule.

**{24}** The Court of Appeals held, however, that the testimony concerning Defendant's BAC "could not have contributed to Defendant's conviction because it was not relevant to any fact the jury was asked to decide." *Marquez*, 2008-NMCA-133, ¶ 25. We recognize that a defendant's BAC is not an essential element of the crime of DWI in violation of Section 66-8-102(A). *Compare* Section 66-8-102(A) (requiring the State to prove that the defendant was "under the influence of intoxicating liquor"), *with* Section 66-8-102(C)(1) (requiring the State to prove that the defendant had "an alcohol concentration of eight one hundredths"). Nonetheless, it is common knowledge that an individual with a BAC at or above the legal limit is highly likely to be impaired by alcohol, at least to the slightest degree. Given the explicit connection between BAC and physical or mental impairment, we agree with the dissenting opinion that there is a reasonable probability that Officer Enyart's testimony "distract[ed] the jury from its function of weighing the proper evidence of guilt [and] encourag[ed] a departure from the legitimate elements of proof." *Marquez*, 2008-NMCA-133, ¶ 32.

**{25}** Lastly, we consider the third factor, namely, whether there was substantial conflicting

evidence to discredit the State's testimony. In the present case, Defendant testified that he had not been impaired by alcohol to the slightest degree, that he had not had any problems balancing and walking, and that he had not performed poorly on the field sobriety tests. Defendant's testimony directly contradicted the testimony of Officers Kirby and Enyart, both of whom testified that Defendant exhibited symptoms of alcohol impairment, including, but not limited to, bloodshot watery eyes, slurred speech, difficulty balancing and walking, and poor performance on the field sobriety tests. Thus, the jury was required to resolve a credibility contest between the State's witnesses and Defendant. Because the improperly admitted evidence undermined Defendant's credibility, we conclude that its admission was prejudicial to Defendant. *See State v. Haynes*, 2000-NMCA-060, ¶ 22, 129 N.M. 304, 6 P.3d 1026 (holding that evidentiary error was not harmless in relevant part because the evidence "came down to a swearing match between [the State's witness] and Defendant"). Stated simply, Defendant's testimony "might have had additional sway with the jury had the error not been made." *Macias*, 2009-NMSC-028, ¶ 43. Accordingly, the third factor, like the second factor, indicates that the evidentiary error was not harmless.

**{26}** Although the evidence in the present case was sufficient to support Defendant's conviction without reference to Officer Enyart's scientific testimony, we nonetheless are compelled to conclude that there is a reasonable probability that this testimony impacted the jury's verdict. Accordingly, the evidentiary error was not harmless and a new trial is required.

## III. CONCLUSION

**{27}** We conclude that the evidence was sufficient to support Defendant's DWI conviction, but that the improper admission of Officer Enyart's scientific testimony was not harmless. Accordingly, we reverse Defendant's conviction and remand for a new trial.

**{28}** **IT IS SO ORDERED.**

_____
**PETRA JIMENEZ MAES, Justice**

**WE CONCUR:**

_____
**EDWARD L. CHÁVEZ, Chief Justice**

_____
**PATRICIO M. SERNA, Justice**

_____
**CHARLES W. DANIELS, Justice**

9

**RICHARD C. BOSSON, Justice (dissenting)**

**BOSSON, Justice (dissenting)**.

**{29}** I respectfully dissent. But first a word about lack of prosecutorial judgment. This is what is known in the trade as a "slam dunk" prosecution. The evidence of Defendant's drunken behavior was overwhelming, capped off by driving his vehicle sixty feet, *in reverse*, into oncoming traffic on Montgomery Boulevard. Only a miracle prevented serious injury or death.

**{30}** The prosecution had only to lay its case before the jury and conviction would surely have followed. Instead, an overzealous prosecutor pressed the officer for pseudo-scientific conclusions about the accuracy of field sobriety tests that, quite simply, do not hold up. The metro court judge should never have allowed this testimony into evidence. Now, after all this time, money, and effort expended, the state must do it all over again.

**{31}** Based solely on this one evidentiary error, the majority has decided to reverse, and I feel compelled to disagree. For all the reasons so ably expressed in Judge Pickard's Court of Appeals majority opinion, I cannot agree that "it is reasonably probable that the jury's verdict would have been different but for that [one] error." *State v. Barr*, 2009-NMSC-024, ¶ 54, 146 N.M. 301, 210 P.3d 198. Juries are fully capable of assessing the mountain of evidence proving Defendant's culpability beyond any reasonable doubt. Juries are not so easily distracted by isolated error as the majority opinion suggests.

**{32}** This jury could put Officer Enyart's erroneous testimony in context and in proper perspective; it likely had very little to do with Defendant's all-but-inevitable conviction. The rules of review for non-constitutional error ("*probable* that the jury's verdict would have been different but for the error") impose on appellate courts a high level of tolerance for mere evidentiary error before we reverse. I do not find the substantial likelihood of prejudice that we need to reverse. Accordingly, I would affirm Defendant's well-deserved conviction and the opinion of the Court of Appeals.

_____
**RICHARD C. BOSSON, Justice**

**Topic Index for *State v. Marquez*, No. 31,294**

**AE**          **APPEAL AND ERROR**
AE-HE          Harmless Error

**CL**          **CRIMINAL LAW**
CL-DG          Driving While Intoxicated

**CA**          **CRIMINAL PROCEDURE**

CA-NT          New Trial

**EV**          **EVIDENCE**
EV-AE          Admissibility of Evidence
EV-SC          Scientific Evidence & *Daubert* Standard
EV-SS          Substantial or Sufficient Evidence