# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: June 6, 2017

**NO. 33,985**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**ZACKARY A. MONTGOMERY,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Angie K. Schneider, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Tonya Noonan Herring, Assistant Attorney General
Albuquerque, NM

for Appellee

Law Offices of Nancy L. Simmons P.C.
Nancy L. Simmons
Albuquerque, NM

for Appellant

**OPINION**

**GARCIA, Judge.**

{1}     Defendant Zackary Montgomery was tried and convicted of driving while under the influence of intoxicating liquors, child abuse negligently caused, and no seat belts. Defendant argues on appeal that a series of actions by the State during trial constituted prosecutorial misconduct, including the State's injection of facts not supported by the evidence during its closing argument. We agree that the misconduct by the prosecutor during trial and closing argument was sufficiently egregious as to constitute reversible error. We need not reach Defendant's other proffered examples of prosecutorial misconduct or other arguments regarding ineffective assistance of counsel. Defendant was deprived of a fair trial. Therefore we reverse and remand for a new trial.

**BACKGROUND**

{2}     On August 4, 2013, at approximately 5:17 p.m., New Mexico State Police Sergeant Marc Davis conducted a traffic stop on Defendant's vehicle after observing that Defendant and the front seat passenger, Defendant's brother, were not wearing seat belts. At trial, Sergeant Davis testified as the arresting officer. He stated that upon approaching the vehicle, he recognized Defendant. After advising Defendant of the reason for the stop, Sergeant Davis returned to his vehicle to issue the citations

and discovered that Defendant had an outstanding warrant for his arrest out of Ruidoso, New Mexico. Sergeant Davis observed Defendant and Defendant's vehicle during the seven minutes he was in his unit writing the citations. Sergeant Davis then issued the citations—first to the passenger, then to Defendant—and advised Defendant of his outstanding warrant. Sergeant Davis further noticed that there were children in the back seat of the van that were not properly restrained for which he issued Defendant a verbal warning. Shortly thereafter, Defendant's grandparents drove up, and Sergeant Davis explained to Defendant's grandmother that Defendant would be placed under arrest. Sergeant Davis then had Defendant get out of the vehicle and placed him under arrest for his outstanding warrant. Defendant became agitated and refused Sergeant Davis's offer to arrest him out of the sight of the children, who were still inside the vehicle.

{3}     Sergeant Davis testified that he had concerns about Defendant's behavior so Sergeant Davis quickly patted down Defendant, cuffed him, and put him into the back of his police unit. Sergeant Davis then smelled alcohol coming from the back of his unit. He told Defendant he could smell alcohol, but Defendant made no comment in response. Sergeant Davis further testified that because Defendant was "volatile" in their prior dealings, he decided to call another officer to conduct field sobriety tests on Defendant at the police station. Officer Hoover administered three standardized

field sobriety tests at the station, and Defendant performed poorly on these tests. Defendant consented to take a breath alcohol test, the results of which registered blood alcohol content (BAC) readings of .12 and .13. Defendant was charged with driving while under the influence of intoxicating liquor, fourth offense, pursuant to NMSA 1978, Section 66-8-102(A), (G) (2010, amended 2016), or in the alternative, having an alcohol concentration of eight one-hundredths (.08) or more in his breath or blood within three hours of operating a motor vehicle, pursuant to Section 66-8-102(C), (G). Defendant was also charged with negligent child abuse, no death or great bodily harm, pursuant to NMSA 1978, Section 30-6-1(D) (2009), and not wearing seat belts, pursuant to NMSA 1978, Section 66-7-372(A) (2001).

{4}     The following excerpts and arguments are relevant to this appeal. The State elicited testimony from Sergeant Davis regarding the "concept of peak." Sergeant Davis described "peak" as your "maximum level of absorption [of alcohol] at that given time." Defense counsel objected that Sergeant Davis was not qualified as an expert in alcohol absorption rates, and the State responded that it would only ask some "general questions." Sergeant Davis went on to testify as to the factors that would affect a person's BAC. Later, on re-direct, the State asked Sergeant Davis, "is it at all possible for someone to drink two shots of liquor and blow .12 forty minutes later?" Defendant again objected, and the district court sustained the objection.

{5} Defendant testified that on the day he was arrested, he was on his way to a birthday party for his daughter but did not have any alcohol to drink prior to being pulled over. Defendant bought alcohol for the party about twenty minutes before the stop, and it was located inside the car. When Sergeant Davis returned to his squad car, Defendant drank two fifty milliliter shots of liquor from the alcohol he had just purchased because he was worried about missing his daughter's birthday and knew he had an outstanding warrant for his arrest. On cross-examination, the State asked Defendant, "you're trying to tell this jury that by taking two shots of alcohol you can manage to get to [a BAC of] .12 forty some minutes later?" Defendant responded, "I'm not educated in that matter," and the prosecutor commented, "didn't figure that part out did you?" Defense counsel objected that the prosecutor's statement was argumentative, and the district court sustained as to the prosecutor's last comment. Defendant's brother also testified that Defendant grabbed shots and drank them while they were waiting for Sergeant Davis to return to their vehicle.

{6} In its closing argument, the State urged the jury to consider whether Defendant's testimony was "believable," whether he was "truthful or untruthful," and whether his story was reasonable. When the prosecutor told the jury that Defendant's theory of the case was that he drank "two shots of alcohol and that led to a BAC of .12 or .13," defense counsel objected and asked to approach. Defense counsel

4

objected to any argument that would amount to unsworn testimony as to what amount of alcohol would lead to that level of BAC. The district court overruled Defendant's objection. The prosecutor continued, telling the jury, "Defendant claims [he] had two shots of alcohol and that led [him] to a .12/.13. Absolutely impossible, absolutely a lie, absolutely more than incredible, . . . couldn't happen under any set of circumstances, that's his story."

{7} The prosecutor then pointed out that 0.12 is 150% higher than the legal limit and went on to ask the jury to analyze Defendant's behavior and demeanor during the traffic stop as a symptom of "poor judgment" or as a symptom of the fact that he had been "drinking all day." Defense counsel objected that there was no evidence Defendant had been drinking all day, the prosecutor's statements were "way outside the record," and requested that the district court give an instruction to disregard. Again, the district court overruled the objection, stating that the prosecutor's comments were permissible argument. The prosecutor continued, stating, "two drinks do not equal .12, period. End of story. That suggests quite a bit of consumption of alcohol. End of story."

{8} The jury found Defendant guilty of: (1) child abuse, (2) driving under the influence of intoxicating liquors and/or drugs, and (3) no seat belts. This appeal followed.

5

**DISCUSSION**

{9}    On appeal, Defendant submits two arguments. First, Defendant argues that a series of questions and statements by the prosecutor constituted prosecutorial misconduct and resulted in cumulative error. Second, Defendant argues that his attorney provided ineffective assistance of counsel and that the district court's denial of Defendant's motion to re-open his case denied him a fair trial. We hold that the State's injection of facts and argument not supported by the evidence, scientific or otherwise, constituted prosecutorial misconduct warranting reversal. As such, we need not address whether Defendant's assertions of other specific instances of prosecutorial misconduct also support reversal. Because we reverse and remand for a new trial, we do not address Defendant's ineffective assistance of counsel argument.

{10}    When a defendant has preserved, by a timely objection, an issue of prosecutorial misconduct, we review for "abuse of discretion[,]" *State v. Stills*, 1998-NMSC-009, ¶ 49, 125 N.M. 66, 957 P.2d 51, because the district court is "in the best position to evaluate the significance of any alleged prosecutorial errors." *State v. Duffy*, 1998-NMSC-014, ¶ 46, 126 N.M. 132, 967 P.2d 807, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110.

{11}    "Our ultimate determination of this issue rests on whether the prosecutor's improprieties had such a persuasive and prejudicial effect on the jury's verdict that

6

the defendant was deprived of a fair trial." *Duffy*, 1998-NMSC-014, ¶ 46. Prosecutorial misconduct may be the result of a single incident so egregious that it may, standing alone, rise to the level of fundamental error. *Id.* ¶ 47. "If, during the course of trial, a prosecutor engages in more than one instance of misconduct, it is not necessary for review that the defendant object every time if the cumulative effect of such improper conduct by the prosecutor denies him a fair trial." *State v. Diaz*, 1983-NMCA-091, ¶ 4, 100 N.M. 210, 668 P.2d 326.

{12}     Defendant argues that the cumulative effect of the claimed acts of prosecutorial misconduct ultimately contributed to an unfair trial. Defendant claims that the primary examples of misconduct were: (1) "the State's injection of facts unsupported by the evidence [at] trial," (2) "the State's introduction of Defendant's post-arrest silence," and (3) "the State's characterization of Defendant as [a thug and a liar]."

**The State's Arguments and Reliance on Facts Unsupported by the Evidence**

{13}     During closing arguments, "remarks by the prosecutor must be based upon the evidence or be in response to the defendant's argument." *State v. Smith*, 2001-NMSC-004, ¶ 38, 130 N.M. 117, 19 P.3d 254. "It is misconduct for a prosecutor to make prejudicial statements not supported by evidence." *Duffy*, 1998-NMSC-014, ¶ 56. However, "[s]tatements having their basis in the evidence, together with reasonable inferences to be drawn therefrom, are permissible and do not warrant

7

reversal." *State v. Herrera*, 1972-NMCA-068, ¶ 8, 84 N.M. 46, 499 P.2d 364 (internal quotation marks and citation omitted). Our Supreme Court has identified three factors "to consider when reviewing questionable statements made during closing arguments for reversible error: (1) whether the statement invades some distinct constitutional protection; (2) whether the statement was isolated and brief, or repeated and pervasive; and (3) whether the statement was invited by the defense." *State v. Torres*, 2012-NMSC-016, ¶ 10, 279 P.3d 740 (alterations, internal quotation marks, and citation omitted). These factors are only meant to be useful guidelines and the context in which the statement was made is the paramount consideration. *Id.* "Where evidence of guilt is overwhelming, or an improper statement is corrected by counsel or the court, reversible error is less likely. If a case turns on a crucial fact that is improperly manipulated in closing, or if counsel persists when admonished to desist, the probability of error is greater." *State v. Sosa*, 2009-NMSC-056, ¶ 34, 147 N.M. 351, 223 P.3d 348. "When these considerations lead to a conclusion that the comments materially altered the trial or likely confused the jury by distorting the evidence, the [s]tate has deprived the defendant of a fair trial, and reversal is warranted." *Torres*, 2012-NMSC-016, ¶ 10 (internal quotation marks and citation omitted).

{14}    Defendant argues that the State improperly relied upon facts unsupported by the evidence admitted at trial and the prosecutor made repetitious improper and

8

unsupported comments in closing as a substitute for non-existent expert testimony. We agree.

{15}     At trial, the State was barred from soliciting a response by Sergeant Davis from the question it posed regarding the relationship between Defendant's BAC and the number of drinks Defendant consumed prior to testing. Nonetheless, the State repeatedly argued this point to the jury during closing argument. The prosecutor made multiple comments in his closing argument that the amount Defendant testified to drinking could not have resulted in the tested BAC of .12/.13 forty minutes later. Arguments such as "absolutely impossible, . . . couldn't happen under any set of circumstances, that's historic" and "two drinks do not equal .12, period" did not have any factual basis in the evidence.

{16}     The State argues that these statements were merely arguments attacking the veracity of Defendant's testimony and suggestions from which the jury might draw reasonable inferences. We disagree. The State attempted to inject scientific facts that were not in evidence regarding a subject matter that would have required qualified expert opinion testimony. *See* Rule 11-703 NMRA (providing foundation requirements for expert testimony in the form of an opinion); *State v. Armijo*, 2014-NMCA-013, ¶¶ 7, 18, 316 P.3d 902 (reversing a driving while intoxicated conviction because the officer was not qualified to give his opinion regarding the amount of

9

alcohol a defendant must have consumed in order to produce breath scores of .06/.05).

{17} In *Armijo*, the officer was asked at trial whether the defendant's BAC scores of .06 and .05 were consistent with the defendant's admission of having consumed only one beer—to which the officer responded, "no, sir[.]" 2014-NMCA-013, ¶ 5. This Court determined that the prosecutor's questioning of the officer was an attempt to elicit an "unqualified and inadmissible opinion" on the defendant's breath scores. *Id.* ¶ 12. This Court held there was reversible error in *Armijo* due to the improperly admitted evidence. *Id.* ¶ 18. In *Armijo*, although this Court reversed on the issue of prejudice resulting from the improperly admitted evidence, *id.* ¶¶ 7, 12-18, the logic and reasoning we applied is equally applicable to Defendant's prosecutorial misconduct argument in this case.

{18} The prosecutor's comments, regarding the correlation between Defendant's BAC and the amount of alcohol Defendant testified to drinking after the traffic stop, constituted baseless references to an expert opinion that was only compounded by the district court's prior refusal to admit Sergeant Davis's unqualified testimony on this specific issue. *See id.* ¶ 7. Whether Defendant consumed only the amount of alcohol stated in testimony or instead had been driving while under the influence of alcohol prior to the stop, was a crucial determination to be made by the jury. The district court

10

specifically rejected the State's efforts to admit evidence correlating the amount of alcohol consumed by Defendant to a BAC test score. Without a factual basis or other qualified scientific foundation to admit such evidence at trial, we can reasonably conclude that the prosecutor's numerous comments about the correlation between Defendant's alcohol consumption and any resulting BAC test results were intentionally made to sway the jury and improperly tip the balance in favor of the State. *See id.* ¶ 12; *see also State v. Marquez*, 2009-NMSC-055, ¶ 23, 147 N.M. 386, 223 P.3d 931 ("In a DWI trial, the improper admission of scientific evidence indicating that [the d]efendant was legally intoxicated at the time of driving will almost certainly tip the balance in favor of the [s]tate." (omission, internal quotation marks, and citation omitted)), *overruled on other grounds by Tollardo*, 2012-NMSC-008, ¶ 37 n.6. The State's improper attempt to discredit Defendant's testimony interfered with the jury's role to weigh the evidence, determine the credibility of the witnesses, and fairly assess the defense offered at trial. *See Sosa*, 2009-NMSC-056, ¶ 34 ("[T]he common thread running through . . . cases finding reversible error is that the prosecutors' comments materially altered the trial or likely confused the jury by distorting the evidence, and thereby deprived the accused of a fair trial."); *see also Duffy*, 1998-NMSC-014, ¶ 56 ("It is misconduct for a prosecutor to make prejudicial statements not supported by evidence.").

**{19}** We are persuaded that the prosecutor's manipulation and repetitive arguments regarding a critical scientific fact not admitted into evidence was so egregious that it denied Defendant a fair trial. *See Armijo*, 2014-NMCA-013, ¶ 16 (recognizing a reasonable probability that the officer's unqualified opinion testimony "could have induced the jury's verdict" even where "the admissible evidence . . . could have supported either a conviction or an acquittal, since a reasonable jury could have returned either verdict" (internal quotation marks and citation omitted)); *State v. Garvin*, 2005-NMCA-107, ¶¶ 37-38, 138 N.M. 164, 117 P.3d 970 (reversing and remanding for a new trial where the evidence of guilt was not overwhelming and the prosecutor's misstatement of the facts and cumulative conduct "rose to a level which deprived [the d]efendant of a fair trial"). As a result, we hold that the district court abused its discretion when it allowed the prosecutor to make critical comments, both during the trial and closing arguments, regarding a correlation between Defendant's alcohol consumption and resulting BAC test results.

**CONCLUSION**

**{20}** For the foregoing reasons, we reverse Defendant's three convictions and remand for a new trial.

12

{21}  **IT IS SO ORDERED.**

_____

**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**


_____

**LINDA M. VANZI, Chief Judge**


_____

**JAMES J. WECHSLER, Judge**

13