This decision was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of non-precedential dispositions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Filing Date: August 4, 2017**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                 **NO. S-1-SC-35837**

**SENOVIO MENDOZA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Jane Shuler-Gray, District Judge**

Hector H. Balderas, Attorney General
Maha Khoury, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
William A. O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**DECISION**

**NAKAMURA, Chief Justice.**

{1} Defendant, Senovio Mendoza, was convicted of first-degree murder, NMSA 1978, § 30-2-1(A)(2) (1994), for committing an armed robbery during which Timothy Wallace was killed. Mendoza received a life sentence and appeals directly to this Court. N.M. Const. art. VI, § 2; Rule 12-102(A)(1) NMRA. Mendoza challenges his conviction on two grounds. First, he contends that the State presented insufficient evidence at his trial to prove that he possessed the mens rea required to secure the felony-murder conviction. Second, he asserts that the district court erred by permitting Detective David Rodriguez to testify as a bloodstain pattern analysis expert because Detective Rodriguez is not, according to Mendoza, sufficiently qualified in this field. We reject both challenges and affirm the conviction. We issue this non-precedential decision because Mendoza raises no questions of law that New Mexico precedent does not already sufficiently address. Rule 12-405(B)(1) NMRA.

## I. DISCUSSION

## A. Sufficiency of the Evidence

{2} "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (internal quotation marks and citation omitted). This Court must determine "whether *any* rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted).

**{3}** The following narrative is derived largely from the testimony of Donald Ybarra, an accomplice in the armed robbery who testified as a witness for the State. Wallace, a known drug dealer, owed Mendoza money. In January 2012, Mendoza contacted Ybarra and Matthew Sloan and, after smoking methamphetamine with the two men, persuaded them to go with him to Wallace's home in Artesia to help him collect the money.

**{4}** Sloan drove the three men, all of whom lived in Carlsbad, to Artesia. When they reached Wallace's home, Mendoza approached the door but was denied entry and told to return in thirty minutes. Mendoza, Ybarra, and Sloan drove around, smoked more methamphetamine, and then returned to Wallace's home. Mendoza was denied entry again, and this time he was told to come back the next day. Now angered, Mendoza said to Ybarra and Sloan in a threatening manner that he "wanted his money," and would get his money "either way." Ybarra explained that he understood this to mean that Mendoza wanted to forcibly enter Wallace's home and take either "money or drugs" from Wallace.

**{5}** Mendoza formulated a plan to commit an armed robbery using Sloan's rifle. Mendoza knew Wallace had guns "everywhere." Mendoza instructed Ybarra to kick

3

Wallace's front door in and directed Sloan to enter with the rifle. At Ybarra's suggestion, the three men agreed that they would enter wearing knit caps with eyeholes cut in them and pulled over their faces, i.e. makeshift ski masks. The men drove to a nearby Walmart and bought the caps. As they drove back to Wallace's residence, Ybarra expressed doubt about the merits of the plan but Mendoza insisted that they proceed.

{6}     The three men returned to Wallace's home sometime after 4:00 a.m. Mendoza went to the door, demanded that he be let in, and then kicked Wallace's door open. Sloan entered first with the rifle and yelled "Pecos Valley Drug Task Force!" Ybarra entered second, followed by Mendoza. Ybarra saw Sloan and Wallace inside a bedroom. Wallace was on his bed attempting to reach underneath a pillow. Police later found a loaded gun and knives in the location Wallace was attempting to reach, and they found additional firearms in other areas of the house. Sloan told Wallace to get on his knees and he complied. Sloan was standing in front of Wallace looking down the barrel of the rifle at him. Mendoza was in another room looking for something and yelling, "Where's it at, where's it at?" Ybarra heard a loud pop and ran outside. Mendoza followed. Sloan exited the home shortly after Mendoza. Sloan had shot and killed Wallace.

**{7}** Mendoza's sufficiency argument focuses on the mens rea element of felony murder. To secure a felony-murder conviction, the State must prove that a defendant acted with the mens rea required for second-degree murder. *State v. Ortega*, 1991-NMSC-084, ¶ 25, 112 N.M. 554, 817 P.2d 1196. The mens rea for second-degree murder is an intent to kill or an intent to do an act "with knowledge that the act creates a strong probability of death or great bodily harm." *Id.* ¶ 32.

**{8}** The State incorrectly asserts that the mens rea for second-degree murder involves "objective knowledge," and it contends that the prosecution need only establish that a defendant "*should have known* that his actions created a strong probability of death or great bodily harm." We rejected these very contentions in *State v. Suazo*, 2017-NMSC-011, ¶¶ 2, 4, 25, 390 P.3d 674, which was issued one day after the State filed its answer brief in this case. We clarified in *Suazo* that second-degree murder requires "proof that [an] accused knew that his or her acts created a strong probability of death or great bodily harm." *Id.* ¶ 4. In Mendoza's case, the jury was correctly instructed that the State was required to prove he "intended to kill or knew that his acts created a strong probability of death or great bodily harm." "[T]he [j]ury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *Holt*, 2016-NMSC-011, ¶ 20 (alteration in original) (internal quotation marks and citation omitted).

**{9}** Mendoza makes three specific claims in support of his broader contention that the State failed to sufficiently establish that he acted with the required mens rea. First, he argues that the State failed to prove beyond a reasonable doubt that he "intended or planned for Mr. Sloan to shoot Mr. Wallace." This claim fails as the State was not required to prove that Mendoza actively plotted Wallace's murder. The State was only required to prove that Mendoza knew his conduct created a strong probability of death or great bodily harm. As we explain immediately below, the State submitted more than sufficient evidence to permit Mendoza's jury to infer that Mendoza acted with this mens rea. *See State v. Duran*, 2006-NMSC-035, ¶ 7, 140 N.M. 94, 140 P.3d 515 ("Intent is subjective and is almost always inferred from other facts in the case, as it is rarely established by direct evidence." (internal quotation marks and citations omitted)).

**{10}** The jury learned that Mendoza knew Wallace was a heavily armed drug dealer, that Mendoza became angry at being denied entry into Wallace's home, that Mendoza concocted the plan to commit the armed robbery and instructed Sloan and Ybarra how to act during the robbery, that Mendoza instructed Sloan to enter Wallace's home with the rifle, and that Mendoza was not deterred from his ill-conceived plan even after Ybarra expressed doubts about its merits. The jury also learned that Wallace attempted to reach for a gun when Mendoza and his companions forcibly entered

6

Wallace's home and that Sloan prevented Wallace from reaching his firearm and from taking any further defensive actions by immediately shooting and killing him. This evidence was sufficient to permit the jury to infer that Mendoza knew that carrying out the armed robbery gave rise to a strong probability that someone would be gravely injured or killed during the robbery.

{11} Mendoza's second argument is unclear. He asserts that the State's trial theory conflated the "not-insignificant danger present in the armed home invasion . . . with the 'strong probability of death or great bodily harm' required for felony murder." Mendoza submits that "[i]t is simply not the case that most home invasions—by the police or anyone else—result in shootouts." We need not attempt to divine the exact meaning of these claims. Two points sufficiently dispose of this line of argument, whatever its ultimate aim might be. Armed robbery may serve as a predicate felony for felony murder. *E.g.*, *State v. Garcia*, 2011-NMSC-003, ¶¶ 2, 38, 149 N.M. 185, 246 P.3d 1057. Whether Mendoza knew perpetrating an armed robbery created a strong probability of death or great bodily harm is an ultimate issue of fact. As already stated, the jury was presented sufficient evidence to permissibly infer Mendoza did know his conduct posed just this risk.

{12} Third, Mendoza claims that "the State cannot use the inherent danger of the underlying felony to impute [to him] the mens rea for felony murder." This argument

fails. It is true that the mens rea the state must establish to convict a defendant of felony murder cannot be presumed from the commission or attempted commission of the predicate felony. *See Ortega*, 1991-NMSC-084, ¶ 21. But this proposition does little to assist Mendoza. The jury did not presume that he possessed the requisite mens rea; rather, Mendoza's jury was properly instructed that it had to find that he possessed the requisite mens rea.

{13} Having rejected Mendoza's specific arguments, we reject his broader contention that the State failed to establish that he acted with the mens rea required to secure a felony-murder conviction. The State more than adequately satisfied its evidentiary burden.

**B.    Admissibility of Expert Testimony**

{14} Mendoza next argues that the district court erred in permitting Detective Rodriguez to testify as an expert on bloodstain pattern analysis because Detective Rodriguez was not, according to Mendoza, qualified as an expert in this field. "[T]he admission of expert testimony or other scientific evidence is peculiarly within the sound discretion of the trial court and will not be reversed absent a showing of abuse of that discretion." *State v. Alberico*, 1993-NMSC-047, ¶ 58, 116 N.M. 156, 861 P.2d 192. "Broad discretion in the admission or exclusion of expert evidence will be sustained unless manifestly erroneous." *Id.* (internal quotation marks and citation

omitted). "[A]ny doubt regarding the admissibility of scientific evidence should be resolved in favor of admission, rather than exclusion." *State v. Fry*, 2006-NMSC-001, ¶ 55, 138 N.M. 700, 126 P.3d 516 (internal quotation marks and citation omitted).

{15} Under Rule 11-702 NMRA,

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

The disjunctive "or" in Rule 11-702 indicates that expert witnesses may qualify under a variety of bases including knowledge, *or* skill, *or* experience, *or* training, *or* education. *State v. Downey*, 2008-NMSC-061, ¶ 26, 145 N.M. 232, 195 P.3d 1244. No set criteria has been established to determine whether an expert possesses the necessary qualifications to be an expert witness, and the district court has broad discretion in deciding whether "expert testimony will assist the trier of fact." *Id.* The court must "determine initially whether expert testimony is competent under Rule 702, not whether the jury will defer to it." *Alberico*, 1993-NMSC-047, ¶ 35. "[W]hen there is competent evidence, the jury are [sic] the judges of its credibility, and the weight to be attached to it." *Id.* (second alteration in original) (emphasis omitted) (internal quotation marks and citation omitted). "[T]he jury [is] free to weigh every

aspect of the expert's qualifications and [is] free to disregard it entirely." *State v. McDonald*, 1998-NMSC-034, ¶ 21, 126 N.M. 44, 966 P.2d 752.

{16}   The State presented evidence that Detective Rodriguez completed 80 hours of training in bloodstain pattern analysis. During his training, he analyzed a dozen reproduced bloodstain scenarios. Detective Rodriguez also completed training in crime scene investigation and reconstruction as well as shooting reconstruction. In addition, he studied under an individual who has published work on bloodstain pattern analysis. Detective Rodriguez is involved in several organizations focusing on forensics, crime scene investigation, and bloodstain pattern analysis. Mendoza contends that this training is insufficient and emphasizes that Detective Rodriguez has no experience utilizing his training outside of the classroom and has not published in the field of bloodstain pattern analysis. We reject these arguments.

{17}   To qualify as an expert, Detective Rodriguez only had to have education *or* training in the field. The district court was not precluded from qualifying Detective Rodriguez as an expert in bloodstain pattern analysis because he has not previously employed the skills he acquired in training in a setting outside of a classroom and because he has not published articles on bloodstain pattern analysis. These alleged deficiencies go not to the admissibility of Detective Rodriguez's testimony but to the weight the jury might give it. *See State v. Torrez*, 2009-NMSC-029, ¶ 18, 146 N.M.

331, 210 P.3d 228 (observing that perceived deficiencies in an expert's qualifications are "relevant to the weight accorded by the jury to [the] testimony and not to the testimony's admissibility" (alteration in original) (internal quotation marks and citation omitted)).

{18}     The district court did not abuse its discretion in qualifying Detective Rodriguez as an expert in bloodstain pattern analysis and permitting him to testify as an expert about these matters. Even if we were to doubt this conclusion, we agree with the State that the admission of Detective Rodriguez's expert testimony is harmless error if error at all.

{19}     The alleged error—admission of expert testimony in violation of New Mexico's evidentiary rules—is a form of non-constitutional error. *State v. Marquez*, 2009-NMSC-055, ¶ 20, 147 N.M. 386, 223 P.3d 931, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, 275 P.3d 110. "[A] non-constitutional error is harmless when there is no reasonable *probability* the error affected the verdict." *See Tollardo*, 2012-NMSC-008, ¶ 36 (internal quotation marks and citation omitted). To determine the likely effect of the error, "courts should evaluate all of the circumstances surrounding the error." *Id.* ¶ 43.

{20}     During Mendoza's trial, Ybarra testified that he saw Wallace on his knees in front of Sloan in the moments before the shooting. A forensic pathologist testified

that the bullet that killed Wallace traveled left to right and downward. Detective Rodriguez testified that, based on the bloodstain patterns in Wallace's bedroom, Wallace had been kneeling on the floor while the shooter stood in front of him.

{21} Detective Rodriguez's testimony merely confirmed the statements of other witnesses: Wallace was kneeling on the floor in front of Sloan when Sloan shot him. There is no reasonable probability that the admission of Detective Rodriguez's testimony affected the jury's decision.

## II. CONCLUSION

{22} There was sufficient evidence to support the jury's finding that Mendoza possessed the requisite mens rea for felony murder. The district court did not err in qualifying Detective Rodriguez as an expert in bloodstain pattern analysis and did not err in admitting his testimony. Even if Detective Rodriguez's testimony was wrongly admitted, the error would be harmless. We affirm Mendoza's conviction.

{23} **IT IS SO ORDERED**.

_____
**JUDITH K. NAKAMURA, Chief Justice**

12

**WE CONCUR:**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

_____
**CHARLES W. DANIELS, Justice**

_____
**BARBARA J. VIGIL, Justice**